141 P.3d 54 (2006)
STATE of Washington, Respondent,
v.
James FRENCH, Appellant.
No. 78569-4.
Supreme Court of Washington, En Banc.
Argued June 13, 2006.
Decided August 17, 2006.
*56 Sheryl Gordon McCloud, Attorney at Law, Seattle, for Appellant.
Kimberley Robert Farr, Michael C. Kinnie, Clark Co Pros Attys Office, Vancouver, for Respondent.
C. JOHNSON, J.
¶ 1 This case involves the issue of whether the common law fugitive disentitlement doctrine applies where a defendant absconds after conviction but before sentencing. If the doctrine applies, a defendant has waived his or her right to appeal the conviction, and we do not need to address any claimed trial court errors relating to James French's (French) convictions. If the doctrine does not apply, we must address the issues pertaining to both French's convictions and sentence.
¶ 2 The issues include: (1) whether the trial court erred when it declined to reopen the case for the purpose of presenting additional evidence of a witness' motive to lie and, if so, whether the error violated the defendant's right to present a defense; (2) whether the trial court erred in refusing to grant public funds to translate extradition documents into English under CrR 3.1(f); (3) whether the extradition treaty at issue applies in the context of a rape conviction and whether the defendant may individually claim protection under the treaty; and (4) whether the crime of child molestation is a lesser included offense to the crime of rape and whether any of the convictions violate principles of double jeopardy or constitute the "same criminal conduct." This case was transferred from the Court of Appeals under RAP 4.4.

FACTUAL AND PROCEDURAL HISTORY
¶ 3 Appellant French was convicted in 1995 of six counts: one count of first degree child molestation, two counts of first degree rape of a child, and three counts of second degree rape of a child, for raping and molesting his stepdaughter, Crystal Fleming, when she was between the ages of 9 and 14. Before the sentencing hearing, French fled to Mexico. He was apprehended in Mexico in 2005 and extradited to Washington under an extradition treaty between the United States and Mexico. French was sentenced to 192 *57 months in prison on May 19, 2005. He is appealing both his convictions and sentence.
¶ 4 During trial, Crystal's mother, Theresa French-Flannery (French-Flannery), testified that she married French in October 1987. The couple resided in Vancouver, Washington, at what was referred to as the "F Street House" and then moved to the "Lake Crest House" in 1990. They operated a bail bonds business from their home. French-Flannery testified that she and French amicably divorced in March 1993. She testified that she wanted to open her own bail bonds business in California and needed French to act as a general agent and sponsor her business. Ultimately, French did not sponsor the business. Defense counsel cross-examined French-Flannery about these events and her bias against French arising from them. Additionally, a defense witness testified that French-Flannery was very upset when she learned that French would not help her. The State presented testimony from Crystal Fleming supporting the charged offenses and the defense cross-examined her.
¶ 5 Over the weekend following the close of the State's rebuttal case, French-Flannery engaged in conversations with a defense witness, Joseph Emington, and with French. The defense sought to reopen the case to present testimony about these incidents. In an offer of proof, defense counsel indicated that Emington would testify that French-Flannery asked Emington to call French on the phone and then got on the phone herself to speak with French. Emington would testify that French-Flannery, while on the phone with French, stated that she hoped and expected French would be acquitted and that she still loved French. A third party, an employee of French, would also testify that she listened in on the phone call between French and French-Flannery at French's request and heard French-Flannery make the same statements described above. Emington would also testify that during the course of the weekend, French-Flannery told him that if French had put money into a college trust fund for her children, "none of this would have occurred," and that she intended to file a civil suit against French when the criminal trial was over. Verbatim Report of Proceedings (VRP) at 988 (Nov. 13, 1995).
¶ 6 The State opposed reopening the case and presented its own offer of proof, based on the prosecutor's conversation with French-Flannery earlier that morning, indicating that French-Flannery admitted that she spoke with Emington and French over the weekend. However, French-Flannery would testify that she told Emington specifically that she did not intend to bring a civil suit against French. French-Flannery would also testify that when she attempted to speak with French on the telephone, he began yelling at her and then the conversation ended. The State argued that neither French-Flannery nor her daughter, Crystal Fleming, ever indicated that they had ulterior motives in bringing this action. The trial court agreed the disputed evidence could show motive or bias on the part of French-Flannery, Emington, and possibly Crystal Fleming, but declined to reopen testimony because the evidence did not relate directly to the sexual abuse allegations at issue and would be misleading or confusing, cause undue delay, and waste the court's time. The trial judge also noted that he was not sure some of the statements would be admissible under the rules of evidence and the record already contained evidence of motive or bias on the part of French-Flannery, Emington, and Crystal Fleming.

ISSUES
¶ 7 (A) Whether the fugitive disentitlement doctrine applies when a defendant absconds from the jurisdiction after conviction but before sentencing?
¶ 8 (B) Whether the defendant's right to present a defense was violated when the trial court declined to reopen the trial to allow two witnesses who had previously testified to present further testimony about statements made after the close of the State's rebuttal case that could qualify as impeachment evidence?
¶ 9 (C) Whether the trial court's denial of public funds for the translation of Mexican extradition documents violates CrR 3.1 and the due process and fair trial guaranties of *58 the Washington and United States Constitutions?
¶ 10 (D) Whether the extradition treaty applies to crimes that do not include a mental intent element?
¶ 11 (E) Whether child molestation is a lesser included offense of rape and whether the defendant's convictions violated his double jeopardy rights or constitute the "same criminal conduct"?

ANALYSIS

The Fugitive Disentitlement Doctrine
¶ 12 The fugitive disentitlement doctrine is a common law rule which provides that one who flees a court's jurisdiction while on appeal waives his or her right to pursue that appeal. Washington courts first recognized the doctrine in State v. Handy, 27 Wash. 469, 67 P. 1094 (1902). In that case, Handy was convicted of obtaining money under false pretenses and sentenced to two years in prison. Handy filed an appeal and later escaped from jail. This court, relying on cases from other jurisdictions, adopted the doctrine and explained that dismissal was appropriate because the defendant would not be available if the appeal were successful and a new trial ordered and would not be available for execution of the sentence if the appeal were not successful. The court ordered the appeal dismissed unless the defendant was returned to custody within 60 days. Handy, 27 Wash. at 470-71, 67 P. 1094.
¶ 13 More recently, the Court of Appeals expanded application of the doctrine. State v. Estrada, 78 Wash.App. 381, 896 P.2d 1307 (1995). In Estrada, the defendant was convicted of vehicular homicide, but fled the state before sentencing. Estrada was apprehended eight years later. After judgment and sentence, Estrada attempted to appeal his conviction based on alleged errors in his trial. The Court of Appeals held that by fleeing the jurisdiction, Estrada waived his right to appeal. The court adopted the analysis of the Second Circuit Court of Appeals and found the fugitive disentitlement doctrine applied for three reasons. First, a defendant demonstrates disrespect for the judicial process by fleeing from the jurisdiction; second, a court's refusal to consider claims of former fugitives tends to discourage escape and promote the orderly operation of the judicial process; and third, a defendant may prejudice the prosecution and benefit himself of herself by escaping for an extended period of time because the government must retry the defendant after memories have faded and evidence has been lost. Estrada, 78 Wash.App. at 383, 896 P.2d 1307 (citing United States v. Persico, 853 F.2d 134, 137 (2d Cir.1988)).
¶ 14 French argues that Estrada was wrongly decided because the analysis relied entirely on federal cases and failed to address the fundamental right to appeal criminal convictions guaranteed by article I, section 22 of the Washington Constitution.[1] He contends that in Washington, a defendant cannot be deemed to have waived the constitutional right to appeal unless the State can show the defendant made a knowing, intelligent, and voluntary waiver of that right. State v. Sweet, 90 Wash.2d 282, 286, 581 P.2d 579 (1978) (holding "there is no presumption in favor of the waiver of the right to appeal. The State carries the burden of demonstrating that a convicted defendant has made a voluntary, knowing, and intelligent waiver of the right to appeal."). French asserts that because there is no federal constitutional right to appeal, federal courts may rely on utilitarian and pragmatic concepts such as mootness and disrespect to the judiciary to justify using the fugitive disentitlement doctrine. He argues, however, that Washington's constitutional guaranty of the right to appeal in all criminal cases trumps the doctrine's traditional justifications.[2]
*59 ¶ 15 French is correct that our cases have recognized that article I, section 22 of the Washington Constitution expressly guarantees the right to appeal in all criminal cases. We can presume that a defendant who has already filed an appeal has been informed of the right to appeal. The same presumption, however, does not apply to a defendant who has not yet begun the appellate process. Also, we have held that the State bears the burden to show a defendant made a knowing, intelligent, and voluntary waiver of his or her right to appeal. Sweet, 90 Wash.2d at 286, 581 P.2d 579.
¶ 16 The reasons that justify dismissal of an appeal when an appellant flees become attenuated when applied in the context of a convicted but unsentenced defendant. First, since sentencing has not occurred, there is nothing yet to appeal. Second, upon sentencing of the defendant, the terms of his or her sentence can be appealed. Third, the deterrent effect of dismissal is adequately addressed by the fact that the State may pursue additional charges for the act of fleeing. Fourth, the defendant presumably is not informed of the right to appeal before sentencing, thereby negating the knowledge requirement of a valid waiver. Finally, under the facts of this case, the State has not argued or established prejudice. Declining to extend the doctrine to the facts of this case is consistent with preserving the constitutional right to appeal.
¶ 17 We hold the fugitive disentitlement doctrine generally does not apply to a defendant who absconds after conviction but before sentencing. We overrule Estrada to the extent it holds a former fugitive who absconds after conviction but before sentencing has waived his or her right to appeal the conviction in all cases. The State has not shown any relationship between French's former fugitive status and the appellate process that would require dismissal of this appeal, nor has the State argued that it would be prejudiced in this case if French were allowed to pursue his appeal. Because we find French's appeal is not barred by the fugitive disentitlement doctrine, we reach the substantive issues of his appeal.

Impeachment Evidence
¶ 18 French argues his constitutional right to present a defense was violated when the trial court judge refused to reopen the case and allow French to present bias evidence concerning statements allegedly made by his ex-wife. French notes the trial judge agreed the proffered evidence would tend to show bias but declined to reopen the case because of the danger of misleading the jury, confusing the issues, causing undue delay, wasting time, and needlessly presenting cumulative evidence. ER 403. French acknowledges the trial judge has discretion to exclude the evidence under the evidence rules but contends his federal constitutional rights required admitting the evidence.
¶ 19 French relies on Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), for the proposition that a witness' motivation in testifying is a constitutionally protected right of cross-examination. In Davis, the trial court granted a protection order preventing the defense from cross-examining a key prosecution witness on his probationary status. The witness had identified the defendant to the police as one of two men the witness had seen near the witness' home with a crowbar where a stolen safe was later recovered. The witness was on probationary status after he had been adjudicated a delinquent for burglarizing two cabins. Because of the nature of the witness' juvenile crimes, the State sought to cross-examine the witness about his motive to lie. Particularly, the State wished to explore whether the defendant was eager to make an identification in this case because the witness knew he would be an obvious suspect in the case due to his prior burglary convictions and the location of where the safe was retrieved. In reversing the conviction and remanding the case, the United States Supreme Court found the defendant's right to effectively cross-examine witnesses outweighed the State's interest in protecting juvenile offenders.
¶ 20 French also relies on Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) to argue his federal constitutional right to present a defense trumps a state evidentiary rule. Chambers was on trial for murdering a local police officer. A *60 key witness had orally confessed to three individuals and formally confessed to authorities to shooting the officer. The witness later repudiated the formal confession. Under Mississippi's common law "voucher" rule, Chambers was not allowed to cross-examine the witness and was restricted in the scope of his direct examination of the witness.[3] The rule prevented Chambers from exploring the circumstances of the witnesses' three prior oral confessions and from challenging the repudiation of the formal confession. In addition, under state hearsay rules, Chambers was not allowed to introduce the testimony of the three witnesses to whom the key witness had confessed. The Court found the combination of these errors effectively denied Chambers a fair trial in accord with traditional and fundamental standards of due process. Chambers, 410 U.S. at 302-03, 93 S.Ct. 1038.
¶ 21 French's situation is readily distinguishable from the trials in Davis and Chambers. The defendants in those cases were wholly prevented from cross-examining key witnesses on certain subjects central to their defenses. In Davis, the witness had identified the defendant to the police and placed the defendant with a crowbar at the scene were the safe was found. In Chambers, the witness' confessions would have exculpated the defendant from the crime entirely. Thus, the witnesses in the above cases were central to the question of the defendants' guilt. Here, French-Flannery did not testify to witnessing or even being suspicious that French was molesting her daughter. Her testimony was used to corroborate some details of Crystal Fleming's testimony. In addition, unlike the defendants in Davis and Chambers, French had the opportunity to and did cross-examine French-Flannery on all subjects, including her bias and motive to lie. The record shows that French's attorney cross-examined French-Flannery about her expectation that French would help her establish a bail bonds business in California and about the fact that ultimately French did not help her. The record also indicates the prosecution repeatedly objected to this line of questioning but the trial judge continued to overrule the objections and allowed the questioning. Thus, unlike the above cases, French was not prevented from cross-examining French-Flannery on her bias or her motives. French has not demonstrated that the trial judge's decision to exclude additional cross-examination on a subject already explored during the trial denied French a fair trial or an opportunity to present an effective defense as guaranteed by the federal constitution. Having so found, we now must decide if the trial judge's decision was in accord with Washington's rules of evidence.
¶ 22 Under the rules of evidence, a trial court may exclude relevant evidence if the probative value is outweighed by the dangers of confusion of the issues or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. ER 403. The trial court's ruling is afforded great deference and is reviewed under an abuse of discretion standard. State v. Luvene, 127 Wash.2d 690, 706-07, 903 P.2d 960 (1995). Here, the trial judge found the proffered evidence might be relevant for impeachment purposes but also found the record already contained sufficient evidence to allow the parties to argue their theories to the jury.
¶ 23 The record shows that French was given an opportunity to fully cross-examine French-Flannery and that he in fact elicited evidence of bias. The defense's offers of proof indicated the witnesses would testify that French-Flannery stated that she expected and hoped French would not be found guilty, that she still loved French, and that she intended to file a civil suit against French after the trial was over. VRP at 984-85, 986, 988 (Nov. 13, 1995). The State's counter-offers of proof stated that French-Flannery specifically indicated she did not intend to bring a civil action nor did she have any interest in bringing a civil action against French. VRP at 991 (Nov. 13, 1995). Thus the offers of proof directly contradicted each other, were not related to the ultimate issue of whether French had molested his step-daughter, *61 and were related to a subject already explored during the defense's cross-examination of French-Flannery. The trial court's ruling excluding the evidence as misleading, confusing, and a waste of time was not unreasonable and therefore was not an abuse of discretion.

Translation of Extradition Documents with Public Funds
¶ 24 As part of its decision to extradite, the Mexican court authored and submitted a 76-page document to the United States Department of Justice. French refers to the document as "the Acuerdo." Br. of Appellant at 30. Under CrR 3.1(f),[4] French brought a motion to have the document translated into English. The trial court denied the motion, finding it was not necessary under CrR 3.1(f) and noting the cost was prohibitive.[5] French now argues the trial court erred by denying his motion. French contends he cannot show the translation is necessary because he cannot know what information the Acuerdo contains until it is translated. However, he speculates that several issues could arise, including the "doctrine of specialty"[6] or the principle of dual criminality.[7] French also argues the trial court's denial of a translator violates Ake v. Oklahoma, 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), which requires the State to provide access to the raw materials necessary to establish an effective defense.
¶ 25 The State argues that the trial court had the discretion to deny the request, and French did not meet his burden of showing the translation was necessary.
¶ 26 Whether expert services are necessary for an indigent defendant's adequate defense is within the discretion of the trial court and will not be overturned absent an abuse of discretion. State v. Young, 125 Wash.2d 688, 693, 888 P.2d 142 (1995). In Young, we examined several Court of Appeals opinions analyzing psychological evaluations under CrR 3.1(f). In discussing the cases, we noted the appellate courts generally did not find an abuse of discretion in cases where the psychological evaluations would not affect criminal liability nor would they be used to rebut similar, adverse evidence presented by the State. We concluded these opinions stood for the proposition that CrR 3.1(f) did not mandate the expenditure of public funds for psychological evaluations when the evaluations would be used only for sentencing purposes. We found these cases were in line with the general rule that the *62 trial court has the discretion to approve requests for public funds and that decision will be upheld unless the court abuses its discretion. Young, 125 Wash.2d at 692-93, 888 P.2d 142.
¶ 27 The trial court here found French's request was not necessary because the judge was limited to sentencing French within the standard range applicable to his six convictions. French failed to show how translation of the Acuerdo was necessary for an adequate defense at his sentencing hearing. French had already been found guilty of the six charges; thus the Acuerdo could not affect the convictions. Moreover, the State was not seeking to introduce similar, adverse evidence at sentencing. Under the terms of the extradition, as outlined in the letter from the United States Department of Justice, Clerk's Papers at 303-04, the State was precluded from seeking a sentence of life imprisonment or death, and from seeking additional fines. The trial court was aware that it could sentence French only within the standard range for the crimes for which he had already been convicted. We find the trial court did not abuse its discretion in denying the motion for public funds under CrR 3.1(f).
¶ 28 We also find the facts of this case do not violate Ake. In Ake, the United States Supreme Court found the defendant was entitled to public funds for expert psychiatric assistance during both the trial and the sentencing phase. The Court found the assistance was necessary at sentencing because Ake's future dangerousness would be at issue and a finding of future dangerousness would directly affect Ake's sentence. Ake, 470 U.S. at 86-87, 105 S.Ct. 1087. Thus, Ake is in line with our discussion above requiring the expenditure of public funds only when the request affects liability or is necessary to rebut similar, adverse evidence presented by the State. Here, the State was not seeking an exceptional sentence. The trial judge, in his order denying the motion, explicitly stated he understood he could not sentence French outside of the standard range for the six convictions. The trial court's decision to deny the request for translation does not conflict with Ake.

Individual Rights under the Extradition Treaty
¶ 29 French argues he may claim individual protection under the extradition treaty between the United States and Mexico because the treaty is self-executing. A self-executing treaty is one that is binding on the courts absent implementing legislation and allows individuals to claim protection under the treaty. French asserts that treaties generally are self-executing unless there is specific language to the contrary. Asakura v. City of Seattle, 265 U.S. 332, 341, 44 S.Ct. 515, 68 L.Ed. 1041 (1924). French claims that under the extradition treaty, he may be extradited only for willful crimes. Because Washington does not define a mental element for the crime of rape, French argues it cannot be a willful crime. Thus, according to French, he was illegally extradited under the terms of the treaty.
¶ 30 Whether a defendant may be prosecuted for a certain crime under an extradition treaty is a matter for the extraditing country to determine. United States v. Campbell, 300 F.3d 202, 209 (2d Cir.2002) (citing Johnson v. Browne, 205 U.S. 309, 316, 27 S.Ct. 539, 51 L.Ed. 816 (1907)). French argues that the crimes for which he was extradited are not extraditable offenses under the treaty. However, Mexico granted French's extradition specifically for those crimes. We decline to reach the merits of French's claim because whether or not child rape and child molestation are extraditable offenses under the treaty was a question for Mexico to decide.[8]

Lesser Included Offense
¶ 31 French argues child molestation in the first degree is a lesser included offense of rape of a child in the first degree. As such, French maintains that his sentence, based on convictions for both crimes, violates *63 principles of double jeopardy, merger, and chapter 9.94A RCW, the Sentencing Reform Act of 1981. The test for whether two offenses may be separately charged and punished is whether each crime contains an element that the other does not and whether the evidence necessary to support a conviction for one crime would have been sufficient to warrant a conviction for the other. State v. Freeman, 153 Wash.2d 765, 772, 108 P.3d 753 (2005) (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). French contends that child molestation requires proof of sexual contact with a child and rape of a child requires proof of sexual intercourse with a child. Thus, he concludes, the only difference between the two crimes is that one requires a finding of penetration while the other does not. French recognizes numerous decisions holding child molestation is not a lesser included offense to child rape but contends these cases are not binding in light of our holding in State v. Lorenz, 152 Wash.2d 22, 34, 93 P.3d 133 (2004). French argues that in Lorenz, we held the mental element of child molestation, acting "for the purpose of sexual gratification," is no longer an element of child molestation. He concludes that without the mental element, child molestation must now qualify as a lesser included offense to the crime of child rape.
¶ 32 French misreads our holding in Lorenz. In Lorenz, we held that the phrase "for the purpose of sexual gratification" is merely a definition of the sexual contact[9] element and therefore does not need to be separately listed in the to-convict instructions. We did not hold that the State is relieved of its burden to prove a defendant acted "for the purpose of sexual gratification" beyond a reasonable doubt. Sexual contact, an element of child molestation, therefore continues to require a showing of purpose or intent; rape of a child does not. Rape of a child also requires a finding of penetration whereas child molestation does not. The two crimes are separate and can be charged and punished separately.

Double Jeopardy
¶ 33 French also argues that Counts I-III and Counts IV-VI constitute the "same criminal conduct" and violate principles of double jeopardy by punishing French more than once for a single offense.[10] French contends Count I duplicates Counts II and III because it is a lesser included offense.[11] French argues Counts II and III and Counts IV-VI constitute the "same criminal conduct" because each subset of counts required the same criminal intent, was committed during the same period of time, occurred at the same place, and was committed against the same victim.
¶ 34 A double jeopardy violation claim is distinct from a "same criminal conduct" claim and requires a separate analysis. The double jeopardy violation focuses on the allowable unit of prosecution and involves the charging and trial stages. The "same criminal conduct" claim involves the sentencing phase and focuses instead on the defendant's criminal intent, whether the crimes were committed at the same time and at the same place, and whether they involved the same victim. State v. Tili, 139 Wash.2d 107, 119 n. 5, 985 P.2d 365 (1999).
¶ 35 The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution prohibit the imposition of multiple punishments for a single *64 offense. Tili, 139 Wash.2d at 112, 985 P.2d 365. In Tili, the defendant was convicted of three counts of first degree rape for a sexual assault involving three distinct acts of penetration. In making a similar double jeopardy claim, Tili argued the legislature did not intend each act of penetration to constitute a single "unit of prosecution." After reviewing the statute, we found the unit of prosecution in a rape case is "sexual intercourse," which is defined as any penetration of the vagina or anus. Tili, 139 Wash.2d at 119, 985 P.2d 365 (quoting RCW 9A.44.010(1)). We therefore rejected the double jeopardy claims and upheld the three convictions.
¶ 36 The facts here present an easier case than Tili. In Tili, the charges arose from an assault which had occurred during a single night. Here, the victim testified to an ongoing pattern of molestation and rape that spanned a period of five years. The victim testified to several acts of penetration occurring at both the F Street house and the Lake Crest house. Because each act of penetration is sufficient to support a single count of rape, French's double jeopardy argument fails.

Same Criminal Conduct
¶ 37 French relies on State v. Palmer, 95 Wash.App. 187, 975 P.2d 1038 (1999) to support his claim that Counts II and III, and Counts IV-VI constitute the "same criminal conduct." In Palmer, the defendant assaulted the victim and forcibly performed oral sex on her. The defendant then removed his clothes and forced the victim to have vaginal intercourse with him. The defendant was convicted of two counts of rape. On appeal, the Court of Appeals reversed and remanded for resentencing because the two acts of rape constituted the same criminal conduct. The Court of Appeals found the two acts involved the same victim, occurred at the same place and were close in time, and the defendant's criminal intent did not change between the first rape and the second rape. Palmer, 95 Wash.App. at 191-92, 975 P.2d 1038.
¶ 38 The State argues the facts here are more like those in State v. Grantham, 84 Wash.App. 854, 932 P.2d 657 (1997). There, the defendant assaulted the victim before anally raping her. The defendant then continued to assault the victim, called her names and threatened her before forcing her to perform oral sex on him. The Court of Appeals upheld the trial court's finding that the two rapes constituted separate criminal conduct, reasoning that Grantham had the opportunity to pause and reflect between the two rapes. The Court of Appeals found that although the two rapes occurred close in time, the defendant had a separate criminal intent for each rape and the crimes were sequential, not simultaneous or continuous. Grantham, 84 Wash.App. at 859, 932 P.2d 657.
¶ 39 A trial court's determination of what constitutes the same criminal conduct will not be disturbed absent an abuse of discretion or misapplication of the law. Tili, 139 Wash.2d at 122, 985 P.2d 365. "Same criminal conduct" is defined as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). The crimes in this case involve the same victim, Crystal Fleming; however, the crimes did not occur at the same time or involve the same criminal intent. The rapes and molestation at issue here occurred on several occasions throughout a five-year span. Unlike the cases mentioned above, where the rapes occurred within minutes of each other, the rapes here occurred over several years, making any temporal connection tenuous at best. In addition, as the State argues, the criminal intent for each crime is distinct. Like the defendant in Grantham, French had significant time during the course of the sexual abuse to pause and reflect upon his actions. The rapes at issue here were sequential, not continuous or simultaneous. We find the trial court correctly found that the rape convictions here were not the same criminal conduct because they occurred over a period of five years and did not involve the same criminal intent.

CONCLUSION
¶ 40 We affirm the defendant's conviction and sentence.
*65 Concurring: ALEXANDER, C.J., MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ.
NOTES
[1] Article I, section 22 reads in pertinent part, "[i]n criminal prosecutions the accused shall have ... the right to appeal in all cases...."
[2] French appears to be arguing the fugitive disentitlement doctrine itself is unconstitutional, regardless of whether it is applied to a defendant who flees the jurisdiction before or after instigating an appeal. Because this case does not involve a defendant who fled after filing an appeal, we do not reach that issue. We limit our analysis to defendants who flee after conviction but before sentencing.
[3] The "voucher" rule prevents a party from impeaching his own witness because the party who calls the witness is assumed to vouch for his or her credibility.
[4] CrR 3.1(f) reads in relevant part "(1) A lawyer for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in the case may request them by a motion to the court. (2) Upon finding the services are necessary and that the defendant is financially unable to obtain them, the court ... shall authorize the services."
[5] French's counsel proposed a specific translator who agreed to translate the document at a reduced rate. The translator quoted the market rate for such translations at $.22 per word, but offered to reduce her rate to $.18 per word. The estimated cost of the entire translation is between $8,000 and $9,000. Br. of Appellant at 30 n. 12.
[6] Under the doctrine of specialty, the requesting nation may not prosecute an extradited defendant for any crime other than those to which the rendering state explicitly granted the extradition. State v. Pang, 132 Wash.2d 852, 902, 940 P.2d 1293 (1997). It is unclear how this issue might apply here because the State did not file any additional charges and French was extradited to face sentencing for the six charges for which he has already been convicted.
[7] The principle of dual criminality asks whether the acts occurring in one jurisdiction would be considered criminal in the other jurisdiction. See Bozilov v. Seifert, 983 F.2d 140, 142 (9th Cir.1993). Again, it seems unlikely this issue might arise. Mexico specifically granted extradition for the six crimes for which French had been convicted. In addition, the treaty lists these crimes as extraditable offenses in an appendix. Extradition Treaty, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059, Appendix. Although French did not have a translation of the Acuerdo, his counsel received a copy of a letter from the United States Department of Justice to the deputy prosecutor discussing the limitations of the extradition. The letter explained the State could proceed only against French for the six convictions already obtained, the defendant could not be sentenced to death or life imprisonment, and the court could not impose any fines in this case. The sentencing judge was aware of the restrictions and sentenced French within the standard range based on the specified convictions and did not impose any fines on French.
[8] We note the treaty, in its appendix, specifically lists the following as extraditable offenses: "Rape; statutory rape; indecent assault; corruption of minors, including unlawful sexual acts with or upon children under the age of consent." Extradition Treaty, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059, Appendix.
[9] Sexual contact is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).
[10] Count I: Child Molestation in the First Degree occurring on or between July 1, 1988 and August 5, 1990; Count II: Rape of a Child in the First Degree occurring on or between July 1, 1988 and August 5, 1990; Count III: Rape of a Child in the First Degree occurring on or between July 1, 1988 and August 5, 1990; Count IV: Rape of a Child in the Second Degree occurring on or between March 13, 1991 and March 12, 1993; Count V: Rape of a Child in the Second Degree occurring on or between March 13, 1991 and March 12, 1993; Count VI: Rape of a Child in the Second Degree occurring on or between March 13, 1991 and March 12, 1993.
[11] As discussed above, child molestation is not a lesser included offense to child rape. Thus, this argument fails.