# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49332-2-II |
| Respondent, | |
| v. | |
| JOSEPH LEROY FUGLE, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Joseph L. Fugle appeals his convictions and sentence for one count of first degree child molestation, two counts of first degree rape of a child, and one count of second degree rape of a child.  Fugle's convictions resulted from seven years of sexual abuse Fugle committed against his stepson, MG.[1]  Fugle argues that the trial court erred by admitting expert testimony regarding delayed disclosure by child victims and by excluding evidence of a list of potential victims MG provided to the police during the investigation.  Fugle also argues that the jury's verdicts were not based on sufficient evidence.  Finally, Fugle argues that the trial court miscalculated his offender score by failing to consider two of his convictions as the same criminal conduct.

---

[1] Because MG was a child at the time of the abuse, we use initials to protect his privacy.  General Order 2011-1 of Division II, *In Re The Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.).

The trial court did not err by admitting the State's expert testimony or by excluding the list of potential victims provided by MG. And, the jury's verdicts are supported by sufficient evidence. Finally, the trial court did not abuse its discretion by failing to consider two of Fugle's convictions as the same criminal conduct. Accordingly, we affirm.

In his Statement of Additional Grounds (SAG),[2] Fugle claims that he was denied his right to an impartial jury based on several alleged incidents that occurred during voir dire. Because Fugle has failed to include the transcript of the voir dire in the record, we decline to consider Fugle's SAG claim.

FACTS

Between late February and early March 2014, MG, then 18 years old, began having flashbacks about sexual abuse committed by Fugle. The abuse started when MG was age 7 and lasted until MG was age 14. Shortly after MG began having the flashbacks, he reported the abuse to his grandmother, Jeanette Jepson. Then Jepson and MG reported the abuse to MG's mother, Jana Fugle.[3] Shortly after disclosing the abuse to Jepson and Jana, MG suffered a pseudoseizure[4] that resulted in his hospitalization. After MG was stabilized and regained consciousness, he had lost all personal memories except for his memories about the abuse.

---

[2] RAP 10.10.

[3] For clarity, we refer to people with the same last name as Fugle by their first names. We intend no disrespect.

[4] A pseudoseizure is a term for a seizure that occurs without corresponding epileptic brain activity.

MG reported the abuse to law enforcement. The State charged Fugle with one count of first degree child molestation, two counts of first degree rape of a child, and one count of second degree rape of a child. Fugle's jury trial began on May 31, 2016.

## I. MG'S TRIAL TESTIMONY

MG testified that he moved into Fugle's home with Jana and his two sisters, when Jana and Fugle married in 2002. MG was seven years old at the time. MG testified that the abuse began shortly after his family moved into Fugle's house. The abuse began with Fugle entering MG's bedroom and fondling MG's genitals. The abuse progressed from fondling to digital penetration, to oral sex, and then to anal sex. MG also recounted some incidents that occurred outside of the home. MG testified about one specific incident that occurred while they were parked in a car. Fugle performed oral sex on MG while MG's four-year-old cousin was in the car with them. The abuse ended when MG was 14 years old.

MG testified that Fugle would make threats about what would happen if MG disclosed the abuse. Fugle threatened to hurt MG. At times, he also threatened to mutilate MG's genitals. Fugle also threatened to hurt or kill Jana and MG's sister.

MG also testified that when he was age 18, he began having flashbacks about the abuse. Fugle had left the house approximately six months before MG began having flashbacks about the abuse. After the flashbacks started, MG called Jepson and told her about his flashbacks. Later, MG also disclosed the abuse to Jana.

Prior to the flashbacks starting, MG had been suffering from numerous medical problems. When MG was age 16, he had to have his gallbladder removed. Then, in October 2012, MG began

suffering body pain, muscle weakness, and chronic fatigue. MG saw numerous medical professionals to diagnose the cause of the pain and fatigue.

In March 2014, MG suffered a pseudoseizure while having a flashback of the abuse. MG was hospitalized for the pseudoseizure. After the pseudoseizure, MG suffered from dissociative amnesia. As a result of the dissociative amnesia, MG lost all memories except his memories of the abuse. MG continued having pseudoseizures for another year and a half. At the time of trial, MG was still suffering from pain and fatigue.

Approximately two months after MG was hospitalized for the pseudoseizures, he decided to report the abuse to law enforcement. MG first met with an advocate from Rebuilding Hope, a sexual abuse advocacy center. The advocate arranged for MG to give an initial statement to law enforcement officers. Then MG gave another statement to Detective Darren Moss, Pierce County Sheriff's Department.

At trial, during cross-examination, Fugle asked MG if he gave Detective Moss a list of the names of other people that MG believed might have been abused by Fugle. The State objected. The trial court sustained the objection and ruled,

> Well, I'm going to sustain the objection to the extent that you're not allowed to ask about what happened to these other people, were they verified or were they not verified. But you can certainly ask him questions about the other people he thought might get hurt and bring out how this letter -- how this list, if he remembers giving one to anyone, developed and who was responsible for it, and that will put into context some of the other things he said about his memory.

III Verbatim Report of Proceedings (VRP) at 199. Then the following exchange took place,

> [DEFENSE]: So [MG], just a few more questions, I hope. Did you provide a list of people you thought might have been abused by [Fugle] to the detective?
>
> [MG]: Yes.
>
> [DEFENSE]: Did you draw up that list?

4

[MG]: Yes.  I gave them some names.

[DEFENSE]: Was that a list that developed through your memories that came back?

[MG]: The list that I gave them was one and then just a couple possibilities, and Jana gave them some.

. . . .

[MG]: Yes, the ones that I listed to the detectives were of my own.

[DEFENSE]: Okay. And did those names come up from your flashbacks or nightmares?

[MG]: Only the one: Joel.

III VRP at 200-01.  In response, the State also asked MG questions about the list,

[STATE]: Okay.  The list of names that you gave the detective, the names that are on there, did those all come from your memory?

[MG]: I only told him a couple.  Jana herself went and told the detectives a list of names of people to check out that was separate from my thing, was not --

[STATE]:  How did you -- how did you recall who those people were in the interview with the detective if you were still suffering from the dissociative amnesia?

[MG]:  Well, Joel, I do actually have from the memory.  I can pick him out, he's one of the only people with a face.  If I look at a picture, in my memory, that clicks for me.  And so I knew Joel, and then I know Joel has a brother, Colby, so I knew those two at least being connected.  And I don't think I ever suggested anybody else to the detectives.

III VRP at 208.  Fugle also asked MG whether any of the people he has spoken to about the abuse contributed to him continuing to develop his memories about the abuse.  MG denied that anyone helped him develop his memories.  He also testified that all his memories were based on his own recollections.

5

## II. EXPERT TESTIMONY

Two experts testified at trial. The State called Keri Arnold, a forensic interviewer, to testify about delayed disclosure by child victims. Fugle called Dr. Daniel Reisberg, an expert on memory.

### A. KERI ARNOLD

Prior to trial, Fugle filed a motion in limine to exclude Arnold's testimony. Fugle argued that Arnold's testimony should be excluded because the case was about memory rather than delayed disclosure. The State argued that the case contained elements of both because the abuse occurred from the time MG was age 7 until he was age 14 and that this entire period was a period of delayed disclosure. The trial court reserved ruling on the motion in limine until after the State made an offer of proof.

In the State's offer of proof, Arnold testified that she was a forensic interviewer with 13 years of experience. She received training in delayed disclosure because delayed disclosure was common among children who were victims of abuse. She also received training on the reasons why children may delay disclosure. Also, based on her experience interviewing children, she had seen many of the typical reasons that children would delay disclosure. She testified that, in her opinion, if a child is abused for seven years without making any disclosures, that would be considered a delayed disclosure. And, Arnold testified about the difference between script memory and episodic memory and how that effects interviewing children. Arnold also testified that she did not interview MG, nor did she review any facts or documents specific to MG's case.

After the State's offer of proof, the trial court ruled,

Okay. I'm going to allow the testimony. I do find that it does provide expert information to jurors that they may not otherwise know and that I do believe it's relevant in part to some portions of what is alleged to have happened in this case.

But by the same token, defense counsel has leeway to point out all of the ways that this testimony is not pertinent to other parts of the case and can also make clear what her scope of expertise is and what it isn't.

IV VRP at 383. The trial court ruled that Arnold was not permitted to testify to anything specific to MG or his case.

Arnold then testified that delayed disclosure refers to "the delay in time between when a first event of alleged abuse occurs and when that abuse is disclosed." IV VRP at 392. She explained that many of the reasons for delayed disclosure are related to fear. The fears include fear of physical harm, fear of not being believed, fear that the offender would go to jail, fear that it will breakup the child's family, or fear the child will lose his or her home. She also testified that many children state that the fear comes from direct threats made by the offender.

Arnold also testified that script memory is a type of memory related to events that happen with great frequency and regularity. When a script memory is developed, it is often difficult to isolate details of one specific instance unless there is something about the specific incident that is significantly different. An episodic memory is related to one specific instance. Many children who suffered prolonged abuse develop a script memory and forensic interviewers often try to pinpoint specific details such as a unique location or a holiday in order to isolate an episodic memory.

## B. DR. DANIEL REISBERG

Dr. Reisberg is a psychologist who specializes in the study of memory. Specifically, Dr. Reisberg has worked on a variety of topics related to memory, such as assessing how well people remember, what people remember, and the best ways to find out what people remember. Dr. Reisberg reviewed most of the information related to MG's case and was able to testify to specific

opinions regarding MG's memory. Dr. Reisberg offered opinions on false memories, repressed memories, dissociative amnesia, and flashbacks.

After providing background information about memory, Dr. Reisberg testified to his specific opinions about MG's case. Overall, Dr. Reisberg testified that the facts of this case were not consistent with how memory works. First, Dr. Reisberg testified that because the abuse of MG was repeated over a long period of time and MG continued to be exposed to triggers even after the abuse ended, it was very unlikely that his memories of the abuse would have gone away at any point. Second, Dr. Reisberg opined that MG's memories had an unnatural amount of detail considering that they were supposed to have been suppressed for approximately four years. Third, Dr. Reisberg had never seen a pattern in which a person forgot all positive memories but maintained negative memories. The defense then rested.

### III. VERDICT AND SENTENCING

During the second day of deliberations, the jury sent the trial court a note stating that they would not be able to reach a unanimous verdict. The trial court chose not to declare a mistrial at that time and required the jury to continue to deliberate.

After further deliberations, the jury reached a verdict and found Fugle guilty of all four counts. The jury also found that MG and Fugle were family or household members. And the jury found aggravating factors, specifically that Fugle used his position of trust to facilitate the commission of the crime and that the crime was a part of an ongoing pattern of sexual abuse.

At sentencing, the State calculated Fugle's offender score at 9 for each count.[5] Fugle argued that his offender score should be calculated at 6 because the two counts of first degree rape of a child should be counted as the same criminal conduct. The trial court ruled that based on *State v. French,*[6] the two counts were not the same criminal conduct. The trial court calculated Fugle's offender score at 9. The trial court imposed a standard range sentence. Fugle appeals his convictions and sentence.

## ANALYSIS

### I. EXPERT TESTIMONY

Fugle argues that the trial court erred by admitting Arnold's testimony because MG's credibility was not put in issue. We disagree.

The trial court has the discretion to permit expert testimony tending to corroborate the testimony of a witness whose credibility is in issue. *See State v. Holland*, 77 Wn. App. 420, 427, 891 P.2d 49 (1995). "An expert's opinion that it is not uncommon for a sexual abuse victim to delay reporting the abuse is appropriate when . . . the credibility of the victim has been put in issue." *Holland*, 77 Wn. App. at 427; *see also State v. Petrich*, 101 Wn.2d 566, 575-76, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988).

Fugle incorrectly asserts that Arnold's testimony was inadmissible because MG's credibility was not challenged specifically on the basis of his delayed disclosure. However, the

---

[5] Fugle had no prior criminal history. However, under RCW 9.94A.525(17)—all current and prior sex offenses count for three points when the conviction is for a sex offense.

[6] *State v. French*, 157 Wn.2d 593, 141 P.3d 54 (2006).

law does not require that a witness's credibility be challenged specifically on the basis of delayed disclosure before expert testimony about delayed disclosure may be admitted to corroborate the witness's story. *See Petrich*, 101 Wn.2d at 574-75. As our Supreme Court has explained,

> Petitioner also correctly assumes that corroborating testimony intended to rehabilitate a witness is not admissible unless the witness's credibility has been attacked by the opposing party. *State v. Froehlich*, 96 Wn.2d 301, 635 P.2d 127 (1981). An attack on credibility is not found merely by evaluating cross[-] examination tactics; several factors taken in conjunction may show a challenge to credibility. *See Froehlich*, at 305. In particular cases, the credibility of a witness may be an inevitable, central issue. *See e.g., United States v. Arroyo-Angulo*, 580 F.2d 1137, 1146-47 (2d Cir.), *cert. denied*, 439 U.S. 913 (1978). Cases involving crimes against children generally put in issue the credibility of the complaining witness, especially if defendant denies the acts charged and the child asserts their commission. An attack on the credibility of these witnesses, however slight, may justify corroborating evidence.

*Petrich*, 101 Wn.2d at 574-75. Therefore, the admissibility of Arnold's testimony turns on whether MG's credibility was challenged generally, not on whether Fugle specifically argued that the delayed disclosure undermined MG's credibility.

Fugle admits his cross-examination was meant to demonstrate "that [MG] had no memory, and the memories that he did have were false memories based in fiction, not fact." Br. of Appellant at 10. As the State correctly points out, this admission demonstrates that MG's credibility was at issue, even if his credibility was not challenged specifically on the basis of the delayed disclosure. Because MG's credibility was at issue, it was appropriate for the trial court to admit expert testimony if that testimony corroborated MG's testimony. *See Petrich*, 101 Wn.2d at 574-75.

Here, MG testified that four years after the abuse ended, when he was age 18, he began having memories about the abuse. MG began to recall that Fugle's threats kept MG from reporting the abuse during the seven years that the abuse was occurring. And, Fugle specifically cross-

examined MG about Fugle's threats. Arnold's testimony, that delayed disclosure was common among child victims and delayed disclosure was often the result of direct threats by the offender, corroborated some of MG's testimony.

Because MG's credibility was at issue and Arnold's testimony corroborated some of MG's testimony, the trial court did not abuse its discretion by admitting Arnold's testimony. Accordingly, the trial court did not err by admitting Arnold's testimony.

## II. LIMITING CROSS-EXAMINATION

Next, Fugle argues that the trial court erred by limiting the scope of MG's cross-examination. The trial court did not abuse its discretion by limiting the scope of cross-examination to the existence of the list rather than the accuracy of the list. Accordingly, the trial court did not err.

The right to confront witnesses is guaranteed by both the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Lile*, 188 Wn.2d 766, 781-82, 398 P.3d 1052 (2017). "Cross-examination is the 'principal means by which the believability of a witness and the truth of his testimony are tested.'" *Lile*, 188 Wn.2d at 782 (quoting *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)). But the right to cross-examine witnesses is not absolute and the scope of cross-examination lies within the trial court's discretion. *Lile*, 188 Wn.2d at 782; *see also State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002) (right to confront witnesses is "limited by general considerations of relevance").

We review the trial court's decision to limit the scope of cross-examination for a manifest abuse of discretion. *Lile*, 188 Wn.2d at 782. A manifest abuse of discretion occurs when the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons. *Lile*, 188

Wn.2d at 782. As our Supreme Court has explained, under the manifest abuse of discretion

standard, "We need not agree with the trial court's decision for us to affirm that decision. We

must merely hold the decision to be reasonable." *Lile*, 188 Wn.2d at 782.

Here, the trial court allowed Fugle to cross-examine MG on whether he created the list of

other persons that he "thought might have been abused" by Fugle, the list came from his memories,

and he actually remembered the people on the list. III VRP at 200. Now, Fugle also argues that

he should have been permitted to cross-examine MG regarding the *accuracy* of the list,

> Given that the question was restricted, the defense was unable to impeach the
> witness regarding his other allegations that were no less suspect than the allegations
> involving himself and Mr. Fugle. In a situation where all created memories were
> suspect, it was even more important that the defense was afforded the opportunity
> to question the accuracy of [MG]'s memory in order to impeach the credibility of
> the very memory.

Br. of Appellant at 12. In other words, in addition to cross-examining Fugle regarding the

existence of the list and whether the list came from MG's memories—memories of people he

claimed he had forgotten—Fugle wanted to explore the accuracy of the substantive information

that MG provided on the list.

The State argues that this line of questioning would be inappropriate because MG did not

testify that he remembered that the people on the list were abused. Because MG only testified that

he provided a list of people that he thought may have been abused, and MG did not testify as to

why he thought the people might have been abused, questions related to the accuracy of the list

would not have been relevant to impeach MG's testimony.

Under ER 401, "relevant evidence" is "evidence having any tendency to make the existence

of any fact that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence." Because MG never testified that he remembered anyone on the list was actually abused by Fugle, questioning MG about the accuracy of the list would not make the accuracy of his other memories more or less probable. Therefore, questions regarding the accuracy of the list were not relevant to impeach MG's testimony. Thus, the trial court did not abuse its discretion by limiting the scope of MG's cross-examination to relevant evidence.

Because a defendant has no constitutional right to cross-examine a witness on irrelevant or otherwise inadmissible evidence, Fugle's right to confront witnesses was not violated by the trial court's ruling limiting the scope of MG's cross-examination. Therefore, the trial court did not err by limiting the scope of MG's cross-examination.

### III. SUFFICIENCY OF THE EVIDENCE

Fugle argues that the jury's verdicts are not supported by sufficient evidence because the verdicts are "based on nothing more than rank speculation and guess work." Br. of Appellant at 14. MG's testimony is sufficient evidence to support the jury's verdicts. Therefore, Fugle's sufficiency of the evidence argument fails.

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, the evidence permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that can be reasonably drawn therefore. *Salinas*, 119 Wn.2d at 201. All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Credibility determinations

are for the trier of fact and are not reviewable on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Fugle primarily bases his sufficiency of the evidence argument on *State v. Alexander*, 64 Wn. App. 147, 822 P.2d 1250 (1992). In *Alexander*, Division One of this court held that there was insufficient evidence to support the jury's verdicts because "the inconsistencies in [the victim's] testimony regarding when the abuse occurred, and whether [some of the] incidents occurred at all, were extreme." 64 Wn. App. at 158. Fugle even admits that the court's holding in *Alexander* was based on the extreme inconsistencies in the victim's testimony. Br. of Appellant at 14 ("the alleged victim's testimony was so filled with extreme inconsistencies"; "the alleged victim directly contradicted herself"). *Alexander* does not dictate reversal in this case. Here, MG's testimony was substantially consistent. Accordingly, there are not "extreme" inconsistencies that require reversal of Fugle's convictions.

Fugle also argues that there was insufficient evidence to support the jury's verdicts because his expert testified that MG's accounts of how he recovered his memories about the abuse and his dissociative amnesia were inconsistent with how memory functions. However, this is an issue of credibility for the jury to determine. By finding Fugle guilty on all charges, it is clear that the jury found MG's account credible and the jury did not find Dr. Reisberg's testimony credible—or at least, the jury did not find Dr. Reisberg's testimony compelling enough to undermine MG's testimony. We do not review credibility determinations or reweigh evidence on appeal. *Camarillo*, 115 Wn.2d at 71. Accordingly, Fugle's argument, that there was insufficient evidence to support the jury's verdicts because his expert's testimony undermined MG's testimony, fails.

The jury found Fugle guilty of first degree child molestation, first degree rape of a child, and second degree rape of a child. To prove first degree child molestation, the State must prove the offender had "sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083. To prove first degree rape of a child, the State must prove that a person had "sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073. And to prove second degree rape of a child, the State must prove that a person had "sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076. After thorough review of the record, it is clear that MG's testimony is more than sufficient to establish the elements of the charged crimes. Accordingly, viewed in the light most favorable to the State, there was sufficient evidence to support the jury's verdicts.

## IV. SAME CRIMINAL CONDUCT

Finally, Fugle appeals his sentence because he argues that the trial court should have found that the two counts of first degree rape of a child were the same criminal conduct. The trial court did not abuse its discretion by finding that the two counts of first degree rape of a child were not the same criminal conduct. Therefore, Fugle's offender score was properly calculated at nine, and we affirm his sentence.

We will not disturb the trial court's same criminal conduct determination absent an abuse of discretion or misapplication of the law. *State v. Chenoweth*, 185 Wn.2d 218, 220-21, 370 P.3d 6 (2016). Under this standard, if the record supports only one conclusion regarding whether crimes

constitute the same criminal conduct, the sentencing court abuses its discretion in arriving at a contrary result. *State v. Aldana Graciano*, 176 Wn.2d 531, 537-38, 295 P.3d 219 (2013). But if the record adequately supports either conclusion, the matter is within the trial court's discretion. *Graciano*, 176 Wn.2d at 538.

Whenever a person is sentenced for two or more current crimes, each crime will be counted separately in his or her offender score unless the trial court makes a finding of fact that two or more of the offenses constituted the same criminal conduct. RCW 9.94A.589(1)(a). Offenses are the "same criminal conduct" when the offenses "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a).

Fugle argues that it "is apparent that the court must conclude that the conduct occurred during the same time period and against the same victim." Br. of Appellant at 15. Fugle bases this assertion on the fact that the two charges were charged over the "same time period." Br. of Appellant at 15. Fugle's argument lacks a basis in the law. To be considered the same criminal conduct, the offenses must occur at the same time, not during the same time period. RCW 9.94A.589(1)(a). Accordingly, "the same time period" is not sufficient to demonstrate that the charges were the same criminal conduct.

And here, the trial court based its same criminal conduct finding on *State v. French*. In *State v. French*, the defendant was convicted of multiple counts of rape of a child for raping his step-daughter over a five-year period. *State v. French*, 157 Wn.2d 593, 597, 141 P.3d 54 (2006). On appeal, the defendant argued that the rapes should have been considered the same criminal conduct for calculating his offender score. *French*, 157 Wn.2d at 612. The trial court correctly

found that the rapes were not the same criminal conduct because the rapes occurred over several years and "were sequential, not continuous or simultaneous." *French*, 157 Wn.2d at 613-14.

*French* would not control the trial court's same criminal conduct finding if the jury found that the two counts of first degree rape of a child were based on a single incident that included both oral and anal sex. However, as Fugle recognizes, "Given that the testimony included statements that the conduct was ongoing and included the same acts both together and separate, it is within the court's discretion to find that the conduct was the same for sentencing purposes." Br. of Appellant at 16. Because the acts also occurred on separate occasions, it was within the trial court's discretion to find that the two counts of first degree rape of a child were not the same criminal conduct.

Here, it was within the trial court's discretion to find that the two counts of first degree rape of a child were not the same criminal conduct, therefore the trial court did not abuse its discretion by finding that the two counts of first degree rape of a child were not the same criminal conduct. *Graciano*, 176 Wn.2d at 538. Because the trial court did not abuse its discretion by finding that the two counts of first degree rape of a child were not the same criminal conduct, the trial court properly calculated Fugle's offender score at nine. Accordingly, we affirm Fugle's sentence.

## SAG

In his SAG, Fugle claims that his convictions should be reversed based on events that occurred during jury selection. Specifically, Fugle claims that he was denied his right to an impartial jury because some of the jurors had already decided that he was guilty before trial began because of the nature of the charges. He also alleges that some jurors stated that they did not

believe the State would incur the time and expense of a trial if the defendant was not guilty. And Fugle asserts that, although these jurors were challenged for cause, the trial court denied the challenges. However, because the voir dire was not part of the record on appeal, we decline to consider Fugle's SAG claim.

We will not review arguments that rely on matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995). Under RAP 9.2(b), it is the appellant's responsibility to designate those portions of the record that are necessary for us to review the appellant's arguments. RAP 9.2(b) also provides,

> A verbatim report of proceedings provided at public expense should not include the voir dire examination or opening statement unless appellate counsel has reason to believe those sections are relevant to the appeal or they are requested by the client for preparing a Statement of Additional Grounds.

However, this provision of RAP 9.2(b) does not apply here because there was no order of indigency entered in this case and the verbatim report of proceedings was not prepared at public expense. Here, Fugle was responsible for arranging for the transcription of all portions of the verbatim report of proceedings necessary for us to review the issues raised on appeal, but Fugle specifically arranged for the verbatim reports of proceedings to be transcribed without including voir dire. Because Fugle has failed to provide us with the record necessary for review of the issues he raises regarding voir dire, any facts regarding voir dire are outside the record. Therefore, we decline to consider the issues Fugle raises regarding voir dire.

No. 49332-2-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, P.J.

BJORGEN, J.