[Nos. 9340-9-III; 9341-7-III.  Division Three.  December 12, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. STACY GAY LANE, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. JESUS SERVIN TORRES, *Appellant.*

288

*Katherine Steele Knox,* for appellant Lane (appointed counsel for appeal).

*C. Harlan Johnson,* for appellant Torres.

*Dennis DeFelice, Prosecuting Attorney,* and *Susan Dahl* and *Ann Marie Dilembo, Deputies,* for respondent.

THOMPSON, C.J.—Stacy Lane and Jesus Torres appeal their jury convictions for possession of a controlled substance (cocaine) with intent to deliver.[1] The primary issue concerns the sufficiency of the affidavit in support of the search warrant for their residence. We affirm.

---

[1]Because these appeals arose out of the same trial and raise similar issues, we have consolidated them.

On February 15, 1988, Detective Henry Montelongo of the Pasco Police Department signed an affidavit in support of a warrant request to search two apartments at 405 and 407 W. Bonneville, Pasco. He stated that within the last 24 hours, a confidential informant had made a controlled buy of one–eighth ounce of cocaine at 407 W. Bonneville. Prior to the buy, the informant was strip searched and given $120. Detective Randy Barnes observed the informant enter the main entrance at 407 W. Bonneville.

The affidavit recited that Detective Barnes then observed "a short Mexican male, light complexion, straight short hair, wearing a powder blue jacket, . . . approximate age early twenties . . ." exit the door entered by the informant. This person went into the lower apartment, numbered 405, which the affidavit described as being just to the right of the main entrance. Detective Barnes also saw this same man return to the upper apartment.

When the informant came out of 407 W. Bonneville, he no longer had the $120 buy money and gave Detective Barnes one–eighth ounce of white powder. Detective Barnes field tested the powder and determined it to be cocaine. The informant related after entering the building he proceeded upstairs and went into the first apartment on the right. Two Mexican males were present. One was the person observed by Detective Barnes, previously described herein; the other was described as 5 feet 8 inches, approximately 30 years old, with curly bushy hair, large stomach, and wearing brown slacks and a tan dress shirt. The informant stated that the younger Mexican male went downstairs to get the cocaine. After the purchase, the informant stated he needed more cocaine. The two men told him to come back in 1 hour and more drugs would be available.

Detective Montelongo further attested that the lower level apartment, 405 W. Bonneville, had been under surveillance for some time, that he had seen a large amount of traffic in and out of the apartment, and other officers had seen known drug users and dealers go in on several occasions.

The court issued a search warrant for both described apartments and for the two men described in the affidavit. The search was conducted that same evening. The address of the upper apartment was in fact 405½ instead of 407. At 405½, the officers seized approximately 1 ounce of cocaine located inside the right front pocket of a tan jacket hanging in the bedroom closet. They also found rent receipts and utility bills for 405½ made out to Stacy Lane, and letters addressed to Jesus Torres. Lucio Ayala was present in 405½ at the time of the search. He told the officers that he had been staying there.

The officers executed the warrant for 405 W. Bonneville at the same time. There, they found Mr. Torres, Ms. Lane, and their infant son. $850 was taken from inside the baby's diaper bag. In a packet of baby wipes, they found three needles and syringes. The officers also seized a gram scale from the lower apartment. According to Detective Monte-longo, Mr. Torres told him that Ms. Lane had nothing to do with the drugs; they were his and he was responsible.

Mr. Ayala, Mr. Torres, and Ms. Lane were all charged with possession of a controlled substance with intent to deliver. Their cases were joined for trial.

Prior to trial, Mr. Torres and Ms. Lane moved to suppress the evidence seized during the search. The court rejected the argument that the warrant did not specifically describe the premises and that the reliability of the informant was not established. The court found:

> Given the specificity of the physical description of the apartment, the inaccuracy of the address is not such a discrepancy that it would void the validity of the search warrant.
>
> The affidavit for the search warrant clearly indicates the informant used was not known to provide information in the past. Nor was the issuing magistrate given any other information concerning the informant's reliability. However, the affidavit does indicate that this informant, within the 24 hours immediately [preceding] the affidavit, had made a controlled buy at the address listed in the affidavit. This controlled buy was made after strip searching the informant and retrieving 1/8th ounce of cocaine. Further, the affidavit is clear that the

information given by the informant after recontacting the officers was specifically corroborated by Detective Barnes through his personal observation and surveillance at the address.

The defendants also moved for disclosure of the name of the confidential informant and for the appointment of an investigator at public expense to locate the informant. The court granted the motion and continued the trial 5 days on the basis that the testimony of the informant could be crucial to the defense. The court stated there was some question in its mind as to whether Mr. Torres fit the description in the affidavit; thus, the informant might testify that Mr. Torres was not one of the men he dealt with. However, the investigator was not able to find the informant before trial began. The court refused to postpone the trial to allow additional time to search. It reasoned that the search for the informant had no certainty of success, regardless of the amount of time allowed. During trial, defense counsel advised the court that an investigator had located the informant but he had again disappeared before the police arrived to detain him.

The State's case at trial consisted of the testimony of the police officers who executed the search warrant. The defendants testified in their own behalf. Mr. Ayala said he was staying in Mr. Torres' apartment while Mr. Torres and Ms. Lane stayed in a friend's apartment downstairs. He slept in the living room. He stated the coat in the bedroom closet was not his. According to Mr. Ayala, a man named Miguel also was staying in the apartment.

Mr. Torres testified that he and Stacy Lane had lived together for about a year. The syringes found in the diaper bag belonged to Ms. Lane, who had a drug problem. They had been staying in the downstairs apartment while the tenant went home to Idaho to have a baby. He stated that the coat in which the cocaine was found belonged to a friend of his, Manuel Virgen, who had been staying in the upstairs apartment for several days before the arrest. Mr. Torres denied admitting to Detective Montelongo that the cocaine was his.

Ms. Lane also testified that there was another person staying in the upstairs apartment prior to the arrest. She stated she did not know there was cocaine in the coat; if she had known about it, she would have used it because of her drug habit.

The jury returned a guilty verdict.

First, did the court err in admitting the evidence seized during the search? Mr. Torres and Ms. Lane contend that the informant's tip did not satisfy the veracity prong of the *Aguilar–Spinelli*[2] test. Ms. Lane further contends the warrant did not describe the upstairs apartment sufficiently since the address was wrong.

■ Washington law relating to the validity of search warrants is summarized in *State v. Murray,* 110 Wn.2d 706, 711–12, 757 P.2d 487 (1988):

> The validity of a search warrant depends on the existence of "probable cause". As we have interpreted Const. art. 1, § 7, that provision forbids police searches of private homes except when probable cause exists and a warrant has issued. *See, e.g., State v. Huft,* 106 Wn.2d 206, 209, 720 P.2d 838 (1986). When police suspicions of illegal activity originate in an informant's tip, probable cause is tested against the standards described in *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969) and *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). The *"Aguilar–Spinelli* test" holds that probable cause will exist only if the informant's basis of knowledge and veracity have been demonstrated *or* if the substance of the tip has been verified by independent [police] investigation. *Huft,* at 209–10; *State v. Jackson,* 102 Wn.2d 432, 436–38, 688 P.2d 136 (1984).
>
> . . . .
>
> Corroborating evidence offered to remedy a deficiency in either prong of the *Aguilar–Spinelli* test "should point to suspicious activities or indications of criminal activity along the lines suggested by the informant." *Huft,* at 210. "Merely verifying 'innocuous details', commonly known facts or easily predictable events should not suffice to remedy a deficiency in either the basis of knowledge or veracity prong." *Jackson,* at

---

[2]*Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

438. Probable cause exists, moreover, only if the tip, as corroborated, "is as trustworthy as a tip which would pass [the *Aguilar–Spinelli* test] without independent corroboration." *Spinelli,* at 415, *see Jackson,* at 446.

(Italics ours.) *See also State v. Dice,* 55 Wn. App. 489, 491, 778 P.2d 531 (1989).

■ A controlled buy can establish an informant's reliability:

> In a "controlled buy," an informant claiming to know that drugs are for sale at a particular place is given marked money, searched for drugs, and observed while sent into the specified location. If the informant "goes in empty and comes out full," his assertion that drugs were available is proven, and his reliability confirmed. Properly executed, a controlled buy can thus provide the facts and circumstances necessary to satisfy *both* prongs of the test for probable cause. 1 W. LaFave, *Search and Seizure* § 3.3(b), at 512 (1978); *State v. Jansen,* 15 Wn. App. 348, 549 P.2d 32, *review denied,* 87 Wn.2d 1015 (1976). *See State v. Steenerson,* 38 Wn. App. 722, 688 P.2d 544 (1984). Where the informant can also assert that more drugs are present, or where their presence can be presumed, probable cause may be found.
>
> . . . As we stated [in *Steenerson*],
>> if credibility can be established by a "track record" of an informant who has stated that incriminating material can be found in a particular place and the materials are then found, it should also suffice that the informant stated that a purchase may be made from a certain person and place and the purchase is in fact made thereafter.
>
> *Steenerson,* 38 Wn. App. at 726; . . ..

(Footnote and citations omitted.) *State v. Casto,* 39 Wn. App. 229, 234–35, 692 P.2d 890 (1984), *review denied,* 103 Wn.2d 1020 (1985). *See also People v. Wares,* 129 Mich. App. 136, 341 N.W.2d 256, 259 (1983) (properly controlled buy may be the "underlying circumstance" indicating credibility).

Here, the search warrant affidavit does not state whether the informant was the one who alerted the police that drugs were present in the apartment before the controlled buy was made. But even if the tip came from someone else, the description of the buy as set forth in the affidavit is sufficient to satisfy the *Aguilar–Spinelli* test. Specifically, the

police strip searched the informant before he went into the apartment and determined that he was not carrying a controlled substance on his person; when he emerged from the apartment, he had cocaine in his possession, but he did not have the buy money which the police had furnished him; the police surveilled the apartment while the informant was there, thus reducing the possibility that the informant obtained the cocaine from a source other than from within the apartment; and, finally, the police had surveilled the two apartments for some time and observed known drug dealers and users go in on several occasions. These facts relate to more than "innocuous details". They corroborate the informant's story and support his veracity. As noted in *State v. Arnold*, 214 Neb. 769, 773, 336 N.W.2d 97, 99–100 (1983):

> An informant selected by the police, who makes a purchase of controlled substances under the personal direction, supervision, and control of a police officer, and informs the officer of what the informant saw and heard at the time of the purchase, is presumptively reliable.

(Citation omitted.)[3]

■ Mr. Torres also points out that Detective Montelongo admitted at the suppression hearing that the informant had a prior criminal record and that he had not supplied the magistrate with this information. He cites Justice Harlan's dissent in *United States v. Harris*, 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075, 2090 (1971), which states that an agent should be able to tell a magistrate about an informant's criminal record without violating the confidentiality of his source. In *State v. Jones*, 55 Wn. App. 343, 345, 777 P.2d 1053 (1989), the court applied the following rule:

> Misstatements or omissions of fact in affidavits supporting search warrants may affect a warrant's validity if they were (1) material, and (2) made deliberately or with reckless disregard for the truth. Material facts deliberately or recklessly omitted

---

[3]*Arnold* analyzed the affidavit under the standards of both *Aguilar–Spinelli* and *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), and held that it satisfied both. *Arnold*, at 100.

from an affidavit must be added to the information contained therein. If the affidavit as supplemented then fails to support a finding of probable cause, the warrant is void and the evidence excluded.

(Citations omitted.)

Here, the affidavit supports a finding of probable cause even if the omitted information is added. Given our common experience that a person who is in a position to set up a controlled buy often has had prior contact with the criminal justice system, we hold the magistrate was not misled.[4] Thus, we need not decide whether the informant's criminal record was deliberately or recklessly omitted.

■ As for the incorrect address, a description of the place to be searched is sufficient if the officer executing the warrant can with reasonable effort ascertain and identify the place intended. *State v. Fisher*, 96 Wn.2d 962, 967, 639 P.2d 743, *cert. denied*, 457 U.S. 1137 (1982); *State v. Cockrell*, 102 Wn.2d 561, 569–70, 689 P.2d 32 (1984). The officer can consider other physical descriptions of the premises to be searched when the correct address is missing. *Fisher*. The key is there must be assurances that a mistaken search would not occur; the burden of proof lies with the moving party. *Fisher*.

In *Fisher*, the warrant authorized a search at 3514 Madison, Tacoma. The address should have been 3514 *South* Madison, Tacoma. The court held that the defendants had not met their burden of proof and the warrant on its face appeared sufficient to allow a reasonable person to ascertain the right location. *Fisher*, at 968.

Here, the street number was not the sole description of the premises to be searched. The upstairs apartment was

---

[4]Contrast *Turngren v. King Cy.*, 104 Wn.2d 293, 705 P.2d 258 (1985), in which the court held that the plaintiffs had established facts sufficient to withstand summary dismissal of their complaint for false arrest and malicious prosecution. In addition to alleging that the police had misrepresented the informant's reliability to the magistrate, the plaintiffs stated that before the search was conducted, the informant told the police that he was mistaken; the police failed to conduct any investigation to confirm the informant's allegations; and the police ignored contrary evidence and explicit warnings that they had the wrong house.

also described as "the first apartment on the right at the top of the stairs . . .". The address of the lower apartment, 405 W. Bonneville, was correct. Ms. Lane has made no showing that a reasonable officer, given this information, would not know which apartment to search.

We hold the trial court properly admitted the evidence seized during the search.

██ ██ Second, did the court abuse its discretion in refusing to continue the trial to allow the investigator for the defense more time to find the informant? Mr. Torres and Ms. Lane contend the informant was a necessary defense witness as he was the only one who could testify that Mr. Torres was not the man who sold him cocaine.[5] The ruling on a motion for a continuance rests in the discretion of the court; it will not be overturned on appeal absent a manifest abuse of discretion. *State v. Campbell,* 103 Wn.2d 1, 14, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094 (1985); *State v. Hartley,* 51 Wn. App. 442, 445, 754 P.2d 131 (1988). When a continuance is requested to locate a witness, the accused must show, among other things, that the witness can *probably* be found if the continuance is granted, and that due diligence has been used to obtain the witness' attendance. *United States v. Sterling,* 742 F.2d 521, 527 (9th Cir. 1984), *cert. denied,* 471 U.S. 1099 (1985). When error is assigned to the denial of a continuance, the crucial question is whether the defendant was denied a fair trial because the defendant would not have been convicted had the witness testified. *Dearinger v. United States,* 468 F.2d 1032, 1034 (9th Cir. 1972).

---

[5]Ms. Lane also argues that the trial court relied on the fact that the third defendant, Mr. Ayala, was incarcerated and a continuance would place his trial beyond the time limits of the speedy trial rule. In her view, the court easily could have eliminated this factor by severing Mr. Ayala's trial from her and Mr. Torres' trial. However, we could not find in the record that the court relied on Mr. Ayala's speedy trial problems in refusing to grant the second continuance. Rather, the court stated: "[T]here is no certainty that he [the informant] could be located if we waited three, four, five, or six weeks, so we are going forward . . .".

Here, the defendants' investigator was not able to produce the informant after 5 days. Although defense counsel advised the court that the investigator believed that he could find the informant if given a little more time, they could not make any guaranties of success. More importantly, we cannot say that the defendants would not have been convicted had the informant testified as predicted. The jury could convict on evidence of constructive possession, even if they did not believe Mr. Torres was the man who sold drugs to the informant.[6] The police found Mr. Torres' and Ms. Lane's belongings in the bedroom of the upstairs apartment—the same bedroom in which the cocaine was found. They also found a large amount of money and drug paraphernalia in the downstairs apartment where Mr. Torres and Ms. Lane were staying. The court's denial of the continuance was not an abuse of discretion.

■ Third, when the evidence is viewed in a light most favorable to the State, could a rational trier of fact find beyond a reasonable doubt that Mr. Torres and Ms. Lane possessed cocaine with intent to deliver? *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).

We hold the evidence meets the *Green* test. The police found the coat in the bedroom closet of the apartment which Mr. Torres and Ms. Lane had rented. They found personal property of the defendants in the same room. The jury simply rejected the defendants' suggestion that a fourth person was responsible for placing the cocaine there without their knowledge.

■ The amount of cocaine—1 ounce—supports a finding of intent to deliver. Testimony presented indicated that a standard size purchase of cocaine is one–eighth ounce, or an "eight ball". The price for this amount is about $120. Thus, an ounce is worth about $1,000. *Cf. State v. Simpson*, 22 Wn. App. 572, 575, 590 P.2d 1276 (1979) (evidence

---

[6]The jury was not told of the controlled buy. We assume that the defendants would have introduced evidence of the buy if they had found the informant and his testimony was favorable to them.

of intent to deliver sufficient, based upon, *inter alia,* the quantity of uncut heroin found in a bottle in a bedroom of defendant's residence). In addition, the scale and the large amount of cash found in the downstairs apartment provide circumstantial evidence from which the jury reasonably could infer that the defendants were dealing. *Cf. State v. Jackson,* 112 Wn.2d 867, 875, 774 P.2d 1211 (1989) (inferences must be rationally related to proven facts).

Fourth, did the court abuse its discretion when it joined Ms. Lane's trial with that of Mr. Torres? Ms. Lane contends she was prejudiced by Mr. Torres' testimony that she was a drug addict. She was therefore forced to take the stand to explain that if she knew about the cocaine, she would have used it.[7]

■■ The standard of review of the denial of a motion for severance is abuse of discretion. *State v. Grisby,* 97 Wn.2d 493, 507, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211 (1983): "In order to support a finding that the trial court abused its discretion, the defendant must be able to point to specific prejudice." "Mutually antagonistic defenses may on occasion be sufficient to support a motion for severance but this is a factual question which must be proved by the defendant." *Grisby,* at 508. The Eleventh Circuit has held that antagonistic defenses do not justify severance unless they are irreconcilable, *i.e.,* mutually exclusive to the extent that one must be disbelieved if another is to be believed. *United States v. Bovain,* 708 F.2d 606, 610 (11th Cir.), *cert. denied,* 464 U.S. 898 (1983). In *Bovain,* each defendant attempted to malign the other through questioning of other witnesses, though neither

---

[7]We note that the only recorded motion for a severance is that of Mr. Torres and Ms. Lane when seeking a continuance. See issue 2. The Clerk's Papers contain a motion and order of joinder, but no record that Ms. Lane opposed that motion. Nevertheless, we choose to address this assignment of error.

defendant took the stand. According to the court, such defenses were not irreconcilable. *Bovain.*[8]

Here, the defenses of Mr. Torres and Ms. Lane were the same—both contended they were unaware of the cocaine in their upstairs bedroom. It was possible to believe the testimony that Ms. Lane was a drug addict without disbelieving their unwitting possession defense. Any prejudice flowing from the testimony about Ms. Lane's addiction was offset by the fact that it explained the presence of the syringes and the gram scale in the downstairs apartment where the two had been staying. We find no abuse of discretion here.

Fifth, were the court's reasonable doubt and constructive possession instructions erroneous?

Mr. Torres contends the reasonable doubt instruction dilutes the State's burden by encouraging the jury to blend and homogenize the evidence rather than highlight items of evidence which are sufficient in themselves to establish reasonable doubt if the jury believes them to be true.[9]

The court's instruction was the same as WPIC 4.01, which has been approved repeatedly. *State v. Walker,* 19 Wn. App. 881, 884, 578 P.2d 83, *review denied,* 90 Wn.2d 1023 (1978); *see also State v. Tanzymore,* 54 Wn.2d 290, 291, 340 P.2d 178 (1959); *State v. Peterson,* 35 Wn.

---

[8]The State cites two cases which set out a list of factors for the court to consider in ruling on a motion to sever separate *offenses* allegedly committed by one defendant. *State v. Watkins,* 53 Wn. App. 264, 270, 766 P.2d 484 (1989); *State v. Gatalski,* 40 Wn. App. 601, 607, 699 P.2d 804, *review denied,* 104 Wn.2d 1019 (1985). We do not believe the factors are applicable to a motion to sever the trials of multiple *defendants.*

[9]The pertinent part of Mr. Torres' proposed instruction reads:
A reasonable doubt is one for which a reason exists. This reason may arise from the evidence or lack of evidence. it is the kind of doubt which would exist in the mind of a reasonable person after fully and carefully considering all of the evidence or lack of evidence. If after such consideration you have an abiding belief that each and every element has been proved and *that none of the evidence (or lack of evidence) leaves a doubt in your mind as to any element(s),* then you are satisfied beyond a reasonable doubt.
(Italics added and reflect the principal proposed modifications to WPIC 4.01, the instruction given by the trial court.)

App. 481, 486, 667 P.2d 645, *review denied,* 100 Wn.2d 1028 (1983). A review of the accuracy of instructions requires a consideration of the particular instruction in its entirety, as well as a reading of the instruction as a whole. *See Walker,* at 884. In so doing we find, like *Walker,* at 884:

> the instructions properly inform a jury that the State has the total burden of proving each element of the offense beyond a reasonable doubt but that its burden does not extend to disproving unreasonable doubts.

There was no error.

Regarding the constructive possession instruction, counsel objected to the inclusion of the phrase "possession need not be exclusive." He argued that in a multi-defendant trial, the jury needed clarifying language. He suggested an instruction advising the jury that mere proximity to the drugs, temporary residence, personal possessions on the premises, or knowledge of the presence of the drug are not sufficient to establish constructive possession.

Under the court's instruction, constructive possession occurs when there is no actual physical possession but there is dominion and control over the substance. The courts have recognized this definition. *See State v. Callahan,* 77 Wn.2d 27, 30–31, 459 P.2d 400 (1969); *State v. Wood,* 45 Wn. App. 299, 312, 725 P.2d 435, *review denied,* 107 Wn.2d 1017 (1986).

The suggested additions come from *State v. Hystad,* 36 Wn. App. 42, 48–49, 671 P.2d 793 (1983). That case involved an appeal from a habitual criminal finding. The court held that a prior guilty plea was not voluntary because the defendant was not adequately advised of the facts of the charge of possession of a controlled substance. He was told only that he was charged with possession. The court held at page 49 that the defendant may have mistakenly believed himself guilty because of his mere proximity to the drug or because of his temporary residence on the premises when the drug was found.

Here, the jury was instructed that possession of a controlled substance is not unlawful if the person does not

know it is in his possession. This instruction on unwitting possession, along with counsel's argument to the jury that the fact the cocaine was found in Mr. Torres' apartment did not necessarily mean that he knew it was there, sufficiently advised the jury of the defendant's theory of the case. *Hystad* is distinguishable on the facts.

Finally, the court did not err when it added the following language to WPIC 50.03: "Such possession need not be exclusive." The addition is a correct statement of the law. *State v. Weiss,* 73 Wn.2d 372, 375, 438 P.2d 610 (1968); *Wood.*

Affirmed.[10]

MUNSON and SHIELDS, JJ., concur.

---

[10]In oral argument, Ms. Lane's counsel invited this court to comment on whether Ms. Lane was competent to stand trial and effectively assist counsel in her defense. Counsel cited the fact that Ms. Lane was unable to stay awake during trial, presumably because of her drug addiction. In the absence of a complete record as to the effect of Ms. Lane's addiction on her ability to assist in her defense, and in the absence of argument and citation to authority, we decline counsel's invitation.