IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30850-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT JAMES MIDDLEWORTH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Robert James Middleworth raises multiple challenges to his

convictions for first degree child rape and first degree child molestation. We agree only

with his argument that restitution was improperly ordered and otherwise affirm.

FACTS

Mr. Middleworth dated K.D., who eventually moved along with her four-year-old

daughter B.D. into the basement apartment Mr. Middleworth occupied in his mother's

house. Not long thereafter Mr. Middleworth and K.D. had to take B.D. to the hospital

due to pain while urinating. Seeing signs of possible sexual abuse, a nurse asked B.D. if

anyone had touched her "down there." B.D. stated that Mr. Middleworth had done so.

CPS[1] forensic child abuse investigator Brook Martin interviewed B.D. on September 28, 2010. The interview was videotaped and law enforcement viewed the interview remotely from an observation room. B.D. disclosed an act of molestation during the interview, but denied any acts that constituted rape.

On the way home from the interview, B.D. commented that one of the balloons in the car looked like a "wiener that went in her mouth." Upon hearing about that remark, Ms. Martin conducted a second interview on September 30, 2010. She briefly mentioned during her testimony at the first trial that she had conducted a follow-up interview on the 30th due to remarks made in the car after her first interview. Neither counsel asked Ms. Martin about that interview.

The defense rested without calling witnesses. The jury convicted Mr. Middleworth as charged on one count of first degree child rape and one count of first degree child molestation. Represented by new counsel, Randy Lewis, Mr. Middleworth obtained a new trial on the basis that his original counsel had prevented him from testifying. After the defense replaced Mr. Lewis with Mr. Jerry Makus, the case eventually was rescheduled for a new trial in early 2012.

The court set a status conference hearing for January 11, 2012, prior to the retrial. The matter was heard in chambers, but was reported so that a record was available in the

_____

[1] Child Protective Services.

event that Mr. Middleworth, who was trying to fire Mr. Makus, alleged ineffective assistance of counsel. The court explained that the conference was intended to be an informal discussion and that the parties and witnesses were not allowed to be present. Mr. Middleworth asked to be present, but the court did not allow the request. At the hearing, Mr. Makus confirmed that he was prepared to go to trial but acknowledged that his client desired to terminate his representation. The trial judge indicated that the representation issue would be taken up later in the courtroom in Mr. Middleworth's presence.

The court also asked if there were any discovery issues and the State asked the court to clarify its earlier ruling about B.D.'s taped interview. The court clarified that the entire interview would be admissible and also stated that it would not change its previous ruling about B.D.'s foster care placement. The parties also discussed the availability of a defense expert who would have to travel from Wisconsin. The matter was complicated because the witness alleged that the first report attributed to him by the defendant—and which was very favorable to the defendant—had been forged. The expert did claim responsibility for a different report that was less favorable to the defense. Defense counsel also asked, and the prosecutor answered, a question about a State's expert's opinion concerning herpes testing of Mr. Middleworth. The parties then went into the courtroom and dealt with Mr. Middleworth's request to replace Mr. Makus.

The second trial began January 18, 2012. It ended in a mistrial when excluded evidence was presented during the State's case. A third trial was held April 2 thru April 10, 2012. Mr. Makus represented Mr. Middleworth at trial. Ms. Martin again testified that there had been a second interview, although the prosecutor did not inquire further. Defense counsel asked if the second interview had been videotaped and where the tape was. Ms. Martin answered that the interview had been videotaped but she had not given the tape to law enforcement because they had not wanted it.

Outside the presence of the jury, the court and parties further inquired into the second interview. Ms. Martin explained the remark that led to the second interview. The court ordered that the video be produced immediately and that the State explain why it had not been produced earlier. The defense moved to dismiss the charges due to this discovery violation. After reviewing the second tape, the trial judge summarized his impressions of it.[2] B.D. has stated that Nana[3] had put bandages on her inner thigh, but no context to the statement was given. There was no allegation that either Nana or her longtime companion ("Papa Brian") had injured B.D.

The court concluded that a continuance for the defense to investigate was appropriate; the matter was continued five days to April 10. The court indicated that the

---

[2] That videotape was not transcribed nor was it transmitted to this court as part of the record of this appeal.

[3] K.D.'s mother.

4

parties could recall any witnesses who had already testified. The State did not recall any witnesses and rested. The defense called the CPS social worker who had transported K.D. When she could not recall any statements by B.D., the social worker was not put before the jury. K.D. was called and testified that she had once left B.D. with her mother during the time she lived with the defendant. The foster mother testified that she had bathed B.D. who cried in pain when her thighs were washed and cried "Brian" several times. "Papa Brian" also was called to testify; he denied hurting B.D. Mr. Middleworth took the stand and also denied touching B.D. inappropriately.

The jury convicted Mr. Middleworth as charged. The court sentenced him to a high end standard range minimum term of 160 months. The court also ordered "restitution" of $2,597.22 in expert witness costs payable to the county prosecutor's office and an additional sum for health care for B.D. Mr. Middleworth then timely appealed to this court.

## ANALYSIS

This appeal raises several claims which we can group into five categories: (1) the status conference hearing held in chambers; (2) the lack of a "separate and distinct acts" instruction; (3) the use of the "belief in the truth" language in 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 4.01; (4) the second interview discovery violation; and (5) the restitution order. We will address the

5

arguments in that manner and decline to reach appellant's cumulative error claim in light of our conclusion as to his trial claims.[4]

*Status Conference*

Mr. Middleworth argues that the status conference violated both his due process right to be present and his public trial right. Although we are dubious about both of those claims, we need not address them because he already received the remedy to which he would have been entitled had he established the alleged violations.

A criminal defendant has the right under article I, section 22 of the Washington constitution to "a speedy public trial." *E.g., State v. Love*, 176 Wn. App. 911, 916, 309 P.3d 1209 (2013). Similarly, the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment ensure the defendant's right to be present at all critical stages of the trial. *State v. Irby*, 170 Wn.2d 874, 880-81, 246 P.3d 796 (2011). When the public trial right has been violated, the defendant is entitled to a new trial. *State v. Strode*, 167 Wn.2d 222, 231, 217 P.3d 310 (2009). Similarly, a violation of the Sixth and Fourteenth Amendment right will result in a new trial unless the error is shown to be harmless beyond a reasonable doubt. *Irby*, 170 Wn.2d at 885-87.

Although the hearing, described previously, looked and sounded like a simple status conference at which the judge and parties exchange information and discuss the

---

[4] We also will not address the issues raised by the statement of additional grounds other than to note that they are without merit.

expected course of events at trial, we need not resolve the case on that basis. Even if we assume that there was a violation of the defendant's public trial and presence rights, he has already been accorded the remedy for such a violation—a new trial. The challenged hearing occurred before the second trial, which resulted in a mistrial. A third trial was then held.

The violation, if any, before the second trial was remedied by the third trial. Accordingly, Mr. Middleworth has already received that which he would have been entitled to receive. There is no basis for reversing the outcome of the third trial for something that occurred prior to an earlier trial. These arguments are, therefore, without merit.

*Separate and Distinct Acts Instruction*

Mr. Middleworth next contends that the trial court erred by failing to instruct the jury that a separate and distinct act needed to be proven for each offense. We believe the jury was adequately instructed and that there was no significant possibility that the defendant was convicted twice for one action.

The law governing review of jury instruction challenges is well settled. Jury instructions are sufficient if they correctly state the law, are not misleading, and allow the parties to argue their respective theories of the case. *State v. Dana*, 73 Wn.2d 533, 536-37, 439 P.2d 403 (1968). The trial court also is granted broad discretion in determining the wording and number of jury instructions. *Petersen v. State*, 100 Wn.2d 421, 440, 671

P.2d 230 (1983). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

A separate and distinct acts instruction is used to prevent double jeopardy violations when multiple counts of the same charge are presented to a jury. *State v. Mutch*, 171 Wn.2d 646, 662, 254 P.3d 803 (2011). The purpose is to prevent the jury from convicting the defendant of multiple counts for the same act. *Id.* A "defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law." *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). "If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses." *Id.* (quoting *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)). Child molestation is not a lesser included offense of child rape. *State v. French*, 157 Wn.2d 593, 610-11, 141 P.3d 54 (2006). Thus, a conviction for both child molestation and child rape does not violate double jeopardy. *Id.* at 611,n.11.

Despite the fact that child rape and child molestation do not stand in a lesser included relationship to each other, Mr. Middleworth argues that the distinct acts instruction was still necessary in this case because of *State v. Land*, 172 Wn. App. 593, 295 P.3d 782 (2013). There, Division One of this court concluded that a distinct act instruction should have been given in a case of child rape and child molestation where

8

there was an allegation of oral-genital contact. *Id.* at 600. In that circumstance, the *Land* court believed that the definitions of sexual molestation and sexual intercourse overlapped, leading to the possibility of an oral rape also amounting to molestation. *Id.* at 599-600. On that basis, the court concluded that it was appropriate to consider the defendant's double jeopardy argument, although it ultimately found the lack of the instruction harmless under the facts of the case. *Id.* at 600-03. The court determined that the offenses were the same in law and fact in this circumstance. *Id.* at 600.

Although *Land* appears to conflate the identical "in fact and in law" test[5] and is in conflict with *French*, we need not decide whether or not we agree with *Land* because it is not factually apropos here. There were no allegations of oral-genital contact and the concerns the *Land* court had about the offenses being the same in law and in fact are not presented here. Mr. Middleworth has not established that the offenses are the same in law and in fact, even under the modified approach undertaken by *Land*.

---

[5] *Land* is the only case to apply the distinct acts instruction to different charges, a significant expansion of the doctrine. *Land* relied for its same "in fact and in law" analysis upon *State v. Hughes*, 166 Wn.2d 675, 212 P.3d 558 (2009). There the court held that second degree rape predicated upon the victim's inability to consent and second degree child rape were the same in law because both required the prosecution to prove an element of nonconsent. *Id.* at 684. In *Land*, the court looked at the definitional level to find the offenses to be the same "in law" rather than at the elements level. 172 Wn. App. at 600. This approach is a dramatic change in the same "in law" prong of double jeopardy analysis.

He thus has not established that the court erred by declining to give his requested "distinct acts" instruction. Although we cannot see why the court would not have given the instruction, it was not an abuse of discretion to decline to do so. There was no error.

*WPIC 4.01*

Mr. Middleworth also argues that the court erred in instructing the jury with the modified WPIC 4.01.[6] He contends that the instruction misdirects the jurors by referencing an "abiding belief in the *truth* of the charge." We believe that the instruction could properly use the word "truth" without running afoul of the constitution.

"Jury instructions, taken in their entirety, must inform the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt." *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). An instruction that relieved the State of its burden would constitute reversible error. *Id.* This type of challenge is reviewed de novo "in the context of the instructions as a whole." *Id.*

WPIC 4.01 reads:

> [The] [Each] defendant has entered a plea of not guilty. That plea puts in issue every element of [the] [each] crime charged. The [State] [City] [County] is the plaintiff and has the burden of proving each element of [the] [each] crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists [as to these elements].

---

[6] He also argues that the prosecutor committed misconduct by arguing the instruction. While we doubt that a prosecutor would engage in misconduct by relying upon one of the court's instructions, we need not reach this derivative argument in light of our conclusion that the instruction was proper.

> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. [If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.]

With case appropriate choices for the bracketed material in the first paragraph, and including the now challenged last sentence in paragraph three, the trial court used this instruction.

The final optional sentence in WPIC 4.01 has been upheld against numerous claims that the "abiding belief" portion either dilutes the State's burden of proof or shifts the burden of proof to the defendant. *Pirtle*, 127 Wn.2d at 656-58; *State v. Lane*, 56 Wn. App. 286, 299-301, 786 P.2d 277 (1989); *State v. Mabry*, 51 Wn. App. 24, 25, 751 P.2d 882 (1988); *State v. Price*, 33 Wn. App. 472, 475-76, 655 P.2d 1191 (1982). Based on a case raising the issue in a different context, Mr. Middleworth now challenges the "belief in the truth" portion of the sentence as confusing or misleading to the jury.

In *State v. Emery*, the prosecutor during closing argument told the jury that the Latin root from which we get the word "verdict" means to "speak the truth" and that "[y]our verdict should speak the truth." *State v. Emery*, 174 Wn.2d 741, 751, 278 P.3d 653 (2012). The Supreme Court held that it is misconduct for a prosecutor to tell the jury that its job is to "speak the truth":

> We hold that the prosecutor's truth statements are improper. The jury's job is not to determine the truth of what happened; a jury therefore does not "speak the truth" or "declare the truth." Rather, a jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt.

*Id.* at 760 (citations omitted). The court explained that such statements could have "confused the jury about its role and the burden of proof." *Id.* at 763.

Seizing on this language, Mr. Middleworth argues that the "abiding belief in the truth" language is the equivalent of telling the jury that its job is to "determine the truth of what happened." Other state and federal courts have addressed this issue. The consensus from those courts is that "truth" is not a bad word. Problems with "search for the truth" instructions arise only when the instructions misdirect or redirect the jury's focus. *Victor v. Nebraska*, 511 U.S. 1, 6, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994). If the instruction suggests "that the jurors embark on 'their own intuitive search for the truth'" then it must be reversed. *Moore v. State*, 283 Ga. 151, 155, 656 S.E.2d 796 (2008).[7] If the instruction tells the jury "to determine the truth in view of the evidence, considered in light of the court's instructions," then it suffices. *Id.*

---

[7] Other cases include *State v. Aleksey*, 343 S.C. 20, 26-29, 538 S.E.2d 248 (2000); *State v. Weisbrode*, 653 A.2d 411, 416-17 (Me. 1995); *State v. Marshall*, 123 N.J. 1, 225-28, 586 A.2d 85 (1991); *State v. Purnell*, 126 N.J. 518, 544-45, 601 A.2d 175 (1992). Notably, one state—Vermont—has rejected a truth instruction very similar to the instruction here. *State v. Giroux*, 151 Vt. 361, 363-65, 561 A.2d 403 (1989) (rejecting "convinced the charge is true").

One of the best explanations for why "search for truth" instructions are fraught with danger comes from the Fifth Circuit:

> As an abstract concept, "seeking the truth" suggests determining whose version of events is more likely true, the government's or the defendant's, and thereby intimates a preponderance of evidence standard. Such an instruction would be error if used in the explanation of the concept of proof beyond a reasonable doubt.

*United States v. Gonzalez–Balderas*, 11 F.3d 1218, 1223 (5th Cir. 1994).[8]

These cases convince us that the "belief in the truth" language in WPIC 4.01 is sufficient under the constitution because it properly directs the jury's attention to its constitutional task by anchoring its search for the truth to the truth of the charges. WPIC 4.01 directs the jury to determine the truth of the charges (i.e. every element of the crimes charged) and to do so after "such consideration," which means "after fully, fairly, and carefully considering all of the evidence or lack of evidence." In context, the language does not misdirect the jury or otherwise changes its focus from its constitutional obligation to determine whether the elements of the crime have been proven beyond a reasonable doubt. The instruction is not constitutionally deficient.

---

[8] Other federal circuit courts have also criticized and openly discouraged "search for truth" instructions for the reason that they are hard to get right and often times, if viewed in isolation, would constitute reversible error. *United States v. Shamsideen*, 511 F.3d 340, 347-48 (2d Cir. 2008); *United States v. Wilson*, 160 F.3d 732, 747 (D.C. Cir. 1998); *United States v. Pine*, 609 F.2d 106, 108 (3d Cir. 1979).

13

*Discovery Violation*

Using an amalgam of theories, Mr. Middleworth next argues that the court erred by failing to dismiss the charges after the late discovery of the tape of the second interview. He has not shown any entitlement to that remedy.

Because of the way this issue is presented, we must consider varying standards governing discovery and governmental behavior impacting a fair trial.

Discovery in a criminal case is governed by CrR 4.7. Critical to this case is CrR 4.7(a)(4), which provides that:

> The prosecuting attorney's obligation under this section is limited to material and information within the knowledge, possession or control of members of the prosecuting attorney's staff.

CrR 4.7(h)(7) provides broad discretion to fashion an appropriate remedy for violations of the rule, including the granting of a continuance or dismissal of an action. CrR 4.7(h)(7)(i). Counsel may be personally sanctioned for willfully violating the rule or discovery order. CrR 4.7(h)(7)(ii).

The Due Process Clause of the United States Constitution requires the government provide any exculpatory information to the defense. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). A *Brady* violation occurs when: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the evidence is material in the sense that if it had been disclosed to the defense, there is a

14

reasonable probability that the result of the proceeding would have been different. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). A *Brady* violation occurs when the information is known to law enforcement, even if not known by the prosecutor. *State v. Mullen*, 171 Wn.2d 881, 894, 259 P.3d 158 (2011). If the evidence could have been discovered by the defense, there is no violation. *Id.* at 896.

CrR 8.3(b) empowers a court to dismiss an action when "due to arbitrary action or governmental misconduct" that prejudices the rights of the defendant, there has been a material effect on the "right to a fair trial." The trial court's rulings under CrR 8.3(b) are reviewed for abuse of discretion; the extraordinary remedy of dismissal is only appropriate when there has been such prejudice that no other action would ensure a fair trial. *State v. Garza*, 99 Wn. App. 291, 295, 994 P.2d 868 (2000).

As noted, Mr. Middleworth combines these three theories while arguing that the action should have been dismissed. However, not all of these rules are applicable to this case and they cannot be combined in the manner he desires.

As noted, the discovery rules apply only to materials within the possession of the prosecutor's office. CrR 4.7(a)(4). That was not the case here. The videotape was in the possession and control of CPS, not the prosecutor's office. Accordingly, there was no violation of the criminal discovery rules.

*Brady* likewise does not aid Mr. Middleworth here. Even if we assume that CPS was performing a law enforcement function, thus bringing this case within the orbit of

15

*Brady*, the argument founders on the materiality prong of the *Brady* test.[9] Even after the tape was disclosed, neither party sought to admit it at trial. As noted by the trial judge, B.D. did not provide any information that suggested someone else had raped and molested her. There was no apparent prejudice to the defense from the late disclosure of the videotape's existence. The defense had the opportunity to call witnesses related to the tape and had time to investigate the matter before putting on its defense. For both reasons, Mr. Middleworth has failed to establish a *Brady* violation.

For similar reasons there was no basis for granting relief under CrR 8.3(b). Assuming there was governmental misconduct, it did not materially affect the defendant's right to a fair trial. The court continued the matter five days prior to the defense presentation of the case in order to investigate the videotape and summon any additional witnesses. There is no indication that any witnesses were missing or that more time was needed to investigate the videotape. Mr. Middleworth has not shown that he was so significantly prejudiced that only a dismissal of the case could remedy the situation. *Garza*, 99 Wn. App. at 295. CrR 8.3(b) simply does not provide a basis for relief.

---

[9] Given that the existence of the second interview was disclosed at the first trial, there is an open question of whether or not the government suppressed anything. We need not resolve that matter here due to the failure to establish materiality.

16

The missing videotape was treated by the court as a discovery issue and the defense was given appropriate time to investigate and respond to it in a timely fashion. No further remedy was required.

*Restitution*

The final challenge presented by Mr. Middleworth is a contention that the trial court erred in ordering restitution to the prosecutor's office of expert witness costs. We agree that these expenses are not subject to restitution.

There is significant case and statutory authority governing restitution awards. The authority to impose restitution is wholly statutory. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). RCW 9A.20.030(1) provides in part:

> If a person has gained money or property or caused a victim to lose money or property through the commission of a crime, upon conviction thereof . . . the court . . . may order the defendant to pay an amount, fixed by the court, not to exceed double the amount of the defendant's gain or the victim's loss from the commission of a crime. Such amount may be used to provide restitution to the victim at the order of the court.

This statute of general application applies to both district and superior courts; the Sentencing Reform Act applies it in this manner: "Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property." RCW 9.94A.753(5). We review a restitution order for an abuse of discretion. *State v. Dedonado*, 99 Wn. App. 251, 255-56, 991 P.2d 1216 (2000).

17

In interpreting the restitution statutes, we must "recognize that they were intended to require the defendant to face the consequences of his or her criminal conduct." *State v. Tobin*, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007). Accordingly, the court should not engage in an overly technical construction that would permit the defendant to escape from just punishment. *Id.* The legislature intended "to grant broad powers of restitution" to the trial court. *State v. Davison*, 116 Wn.2d 917, 920, 809 P.2d 1374 (1991).

The amount of restitution must be established by a preponderance of the evidence. *State v. Kinneman*, 155 Wn.2d 272, 285, 119 P.3d 350 (2005). Evidence is sufficient to support a restitution order if it provides a reasonable basis, other than conjecture or speculation, to estimate the loss. *Id.*; *State v. Fleming*, 75 Wn. App. 270, 274-75, 877 P.2d 243 (1994). Restitution is not limited to cases where the damage computation is simple. *Kinneman*, 155 Wn.2d at 285.

The court ordered restitution to Molina Healthcare in an amount to be determined as well as restitution to the Walla Walla County Prosecutor's Office in the amount of $2,597.22 for "expert witness fees." The award to Molina is in reference to B.D. Although Mr. Middleworth challenges both awards, we will only address the award to the prosecutor's office. On its face, there is nothing obviously wrong about an award to a healthcare provider for the victim. More importantly, since there is no amount awarded

18

at this time,[10] there is little to discuss. If that award is updated, Mr. Middleworth can challenge it if he has a basis for doing so. At this point there is nothing to review.

The award to the prosecutor for expert witness fees is another matter. Restitution is to the victim or others who incurred costs on her behalf. For the purpose of collecting the expenses of prosecution, the prosecutor is not a "victim" under the restitution statute. *Cf. State v. Kisor*, 82 Wn. App. 175, 183-84, 916 P.2d 978 (1986) (officer not a victim despite loss of personal time spent with police dog killed by defendant, although county could recoup costs of training a new dog). Costs, including expert witness expenses, can be recovered. *See State v. Baggett*, 103 Wn. App. 564, 571-72, 13 P.3d 659 (2000), *review denied*, 143 Wn.2d 1011 (2001) (upholding award of expert fees as a recoverable cost under RCW 10.01.160(1)).

However, an award of costs is not an award of restitution. Restitution is mandatory under our statutes and is ordered without regard to the defendant's ability to pay. Costs can only be imposed after the court finds that the defendant has the ability to pay them. RCW 10.01.160(3). Restitution has priority over court costs. RCW 9.94A.760(1). Court costs also can be remitted under certain circumstances. RCW 10.01.160(4). Thus, restitution and costs differ in many significant regards. It was error to treat the expert fees, which appear to be a cost, as restitution.

---

[10] We have not been presented with any updated information about restitution.

We reverse the restitution awarded for the expert witness fees. In all other respects, the judgment is affirmed.

Affirmed in part, reversed in part.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, C.J.

WE CONCUR:

Kulik, J.P.T.

Siddoway, J.

20