IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38326-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JORDAN PRESTON ORTIZ, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Police responded to a disturbance call at a known drug house and arrested Jordan Ortiz on an outstanding warrant. Upon searching Mr. Ortiz, police found multiple varieties of controlled substances in large amounts and a wad of cash in small denominations totaling $275. Mr. Ortiz made admissions upon arrest and during a later recorded jail phone call to an acquaintance that supported his intent to sell drugs. He challenges his convictions for possession of a controlled substance with intent to distribute on the basis that his admissions should have been suppressed under the corpus delicti rule. He argues that absent his admissions, the evidence was insufficient to show an intent to distribute where he innocently possessed the drugs for personal use.

We hold that the evidence, when considered in context and totality, is sufficient to corroborate Mr. Ortiz's admissions and that the trial court did not err in denying his motion to suppress his statements.

No. 38326-1-III
*State v. Ortiz*

BACKGROUND

For purpose of the corpus delicti rule, we consider the facts in a light most favorable to the State as the nonmoving party.

On April 13, 2021, officers responded to a "known drug house" on a domestic disturbance call naming Jordan Ortiz.[1]  Clerk's Papers (CP) at 21Officer Natalie BrinJones arrived on the scene and observed a person she recognized as Ortiz "hop over the fence" behind the involved house into the alley near her vehicle.  CP at 21.  Mr. Ortiz reached into his pocket and threw an unknown item back over the fence.[2]  Officer BrinJones detained Mr. Ortiz to investigate the domestic disturbance.  Mr. Ortiz stated that he jumped the fence to run from a warrant.  A witness later clarified that Mr. Ortiz was not at fault for the domestic disturbance.

Mr. Ortiz was arrested on an active warrant.  During the search incident to arrest, Officer BrinJones located what appeared to be several different types of controlled substances.  In Mr. Ortiz's outside jacket pocket, Officer BrinJones found a baggy of heroin.  In an inside pocket, Officer Jones found an eyeglass case.  As she pulled the case out of Mr. Ortiz's pocket, he stated, "'I'm f[***]ed.'"  CP at 23.  Inside the case, Officer

_____

[1] The April 16, 2021 date in the police report is incorrect.
[2] This action was observed later on vehicle camera footage and so the item was not recovered.

2

BrinJones found two "baggies" of methamphetamine and separate baggies with four pills.

The total methamphetamine within two separate baggies weighed 31.9 grams and was broken into numerous small and larger pieces. The one bag of methamphetamine tested by the lab weighed 18.89 grams. The cash value of the methamphetamine was $1,200. The ball of heroin weighed 4.3 grams (with baggie) and 3.3 grams alone. Separately packaged were two pills of Suboxone (buprenorphine hydrochloride), one pill of diazepam, and one-half of a pill of Xanax (alprazolam). The officer stated that, in her opinion, the drug amounts were larger than average user amounts.

Mr. Ortiz admitted that the pills were Xanax and Suboxone, that the white crystal substance in the baggies was methamphetamine, and that the black tar substance was heroin.[3] He claimed to use heroin and methamphetamine but not "deal." CP at 23.

Mr. Ortiz asked the officer how he could be arrested if he did not have a scale. He asked, "what if" he just bought in quantity for personal use. Report of Proceedings (RP) (June 23, 2021) at 171. No syringes, pipes, lighter, or other usage paraphernalia were located. No empty baggies or scales, or guns were located. The officer did not witness any buys involving Mr. Ortiz.

---

[3] Mr. Ortiz does not challenge the admission or corpus of his drug identification statements on appeal.

Officer BrinJones also located a wallet and a separate "wad of cash" inside Ortiz's jacket. RP (June 17, 2021) at 14. The wallet contained a few small bills. The wad of cash totaled $275 in small denominations broken down as one $50 bill, nine $20 bills, two $10 bills, three $5 bills, and ten $1 bills. The officer confronted Mr. Ortiz with the tendency of drug dealers to carry small bills to make change during transactions and Mr. Ortiz explained that he makes his money with phone apps and cryptocurrency which he cashes out with a PayPal account and debit gift cards.

Mr. Ortiz was charged with two counts of possession of a controlled substance with intent to deliver, one for the methamphetamine and one for the heroin. RCW 69.50.401(1)(2)(a)-(b). A few days later, Mr. Ortiz made a phone call to an acquaintance from the jail that was recorded. When this person asked Ortiz how he "ended up back in Chelan," Ortiz responded that he "pretty much got set up" and that they are trying to "hit him with UPC to deliver with intent." CP at 25. When the acquaintance reminded Mr. Ortiz that she told him not to be doing "stuff like this," Mr. Ortiz replied, "'I know'" and that "he was trying to do 'whatever he could.'" CP at 25-26. When the acquaintance asked, "'You tried to do whatever you could to what?'", Mr. Ortiz replied, "'To make some extra money.'" CP at 26. The acquaintance told Mr. Ortiz that he "should have been working." CP at 26. He responds, "'No, no, no, I know.'" CP at 26.

4

Mr. Ortiz moved to suppress his admissions and dismiss the charges for insufficient evidence under the corpus delicti rule. During the hearing, Officer BrinJones testified that the typical drug user consumes one or two points of heroin a day. A "point" is one-tenth of a gram. Mathematically, Mr. Ortiz had over 40 uses of heroin on his person. He had over one month's use of methamphetamine, where a daily dose ranged from a gram to two grams on the higher end. Additionally, the officer pointed out that dealers tend to carry various types of drugs and small bills.

The trial court denied Ortiz's motions to suppress his admissions and dismiss the charges. The court found there was sufficient independent evidence of the crimes, particularly "the large quantity of meth (approximately 30 grams) and heroin (approximately 4 grams) as well as the large amount of cash ($275) and the small bill denominations." CP at 97. The court also commented that "the fact that there were different types of controlled substances; there was over, what Officer BrinJones estimated, a month's worth of methamphetamine found on the defendant's person, along with the $275, in cash, in small denominations; and the fact that Mr. Ortiz was contacted outside of a known drug house, the Court believes that that's sufficient to deny the defendant's motions to dismiss and deny the—to the request to suppress the statement, based upon corpus delicti." RP (June 17, 2021) at 44-45.

5

At trial, Mr. Ortiz admitted to his possession and use of heroin and methamphetamine. He showed his drug use "track marks" to the jury. RP (June 23, 2021) at 308. Mr. Ortiz testified that he was carrying two different kinds of methamphetamine that day, one in each bag, with one being "stronger." *Id*. at 281, 290. One one-half ounce bag he purchased that day for $200, but the other bag he was just carrying on him. He testified to using two and one-half grams of methamphetamine daily, typically buying one ounce at a time. He indicated that one ounce would cost $355. Mr. Ortiz indicated he purchased the three-gram ball of heroin for $175 and bought up to one-half an ounce of heroin at a time in the past. He bought in bulk to avoid being robbed or beaten up. He explained the pills he carried as a means to "detox" when needed. *Id*. at 291. He testified to living part-time in the house where he was arrested. He also testified that he worked in construction, being paid under the table, from March 2020 till October 2020 and again for a month in March 2021.

Officer BrinJones testified at trial that a typical methamphetamine daily user amount found on an addict is "anywhere from residue to maybe a couple of grams if they're a heavy user." *Id*. at 171. She also indicated that when drug addicts get drugs, "they use the drugs so they typically do not have large quantities on them." *Id*. at 172. The same amounts apply to heroin. Individual users tend to carry a single chunk, not

6

numerous little chunks of methamphetamine. Single doses normally sell for under $50. Typical users also tend to carry only one type of drug, although users may deal to support their habit. Cash carried by individuals varies, where an unemployed heavy user would carry very little, and an employed user would have more.

The jury found Mr. Ortiz guilty of both counts. Mr. Ortiz timely appealed.

ANALYSIS

Mr. Ortiz challenges the trial court's admission of his call from the jail and his arrest statements, asserting that there is insufficient independent evidence from his statements to allow the admission of the statements under the corpus delicti rule. Corpus delicti is both a rule of sufficiency and a rule of evidence. *State v. Cardenas-Flores*, 189 Wn.2d 243, 256, 401 P.3d 19 (2017). Mr. Ortiz asserts that he purchased the drugs for personal use as an innocent explanation for his possession of the large amounts of drugs. He argues that $275 is not a large amount of cash even though he was unemployed and obtaining unclear earnings from online applications. He further argues that without his statements, the evidence is insufficient to support his conviction. He seeks reversal and dismissal of his charges. We review his corpus delicti challenge de novo. *State v. Green*, 182 Wn. App. 133, 143, 328 P.3d 988 (2014).

The doctrine of corpus delicti requires the State to provide independent corroborating evidence of any crime described in the defendant's incriminating statement before it may be admitted. *State v. Sprague*, 16 Wn. App. 2d 213, 225, 480 P.3d 471 (2021) (citing *State v. Brockob*, 159 Wn.2d 311, 327-28, 150 P.3d 59 (2006)).[4] The purpose of this rule is to prevent the consideration of questionably reliable confessions. *Id.* To do this, independent evidence must (1) corroborate the defendant's statement with prima facie evidence, (2) be consistent with guilt, and (3) "'inconsistent with a[ ] hypothesis of innocence'" for (4) the specific crime charged. *Brockob*, 159 Wn.2d at 328-29 (alteration in original) (some quotation marks omitted) (quoting *State v. Aten*, 130 Wn.2d 640, 660, 927 P.2d 210 (1996). If the "independent evidence supports 'reasonable and logical inferences of both criminal agency and noncriminal cause,' it is insufficient to corroborate a defendant's admission of guilt." *Id.* at 329..

We consider the evidence in a light most favorable to the State in determining whether it is sufficient to provide prima facie corroboration of the crime charged. *Aten*, 130 Wn.2d at 658. The corroborating evidence does not need to prove the crime beyond a reasonable doubt or even show probable cause. See *id.* Instead, "prima facie" evidence

---

[4] The corpus delicti rule applies to any incriminating statement by a defendant and not just confessions and admissions. *Aten*, 130 Wn.2d 640, 657, 927 P.2d 210 (1996).

supports a " 'logical and reasonable inference of the facts sought to be proved.' " *Id.* at

656 (quoting *State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995)).

Here, the charged crime is possessing a controlled substance with intent to deliver.

The statutory elements of possession of a controlled substance with intent to deliver are:

(1) unlawful possession, (2) with intent to deliver, (3) a controlled substance; in this case,

methamphetamine and heroin. RCW 69.50.401(1), (2)(a)-(b). Ortiz readily

acknowledges that he possessed the controlled substances.[5] The only question for

purposes of his corpus delicti challenge is whether the independent evidence is sufficient

to show proof of his intent to deliver and whether that evidence is inconsistent with mere

possession.

While the intent element can be inferred from the evidence, Washington case law

forbids the inference of intent to deliver based on mere possession of a controlled

substance regardless of volume, without at least one additional factor indicating sale.

*State v. Brown*, 68 Wn. App. 480, 483-84, 843 P.2d 1098 (1993). Likewise, an officer's

opinion on the common behaviors of drug dealers and users is not enough to support an

inference that a specific defendant intends to or is engaged in sales. *Brockob*, 159 Wn.2d

---

[5] Shortly before Ortiz's arrest, the Supreme Court declared the felony statute prohibiting possession of controlled substances unconstitutional. *See State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

at 331-32.  Instead, the additional factor must be suggestive of sales instead of mere

possession.  *State v. Hagler*, 74 Wn. App. 232, 872 P.2d 85 (1994) (possession of 24

rocks of cocaine and $342 created a reasonable inference of sale).  The additional factor

can be the possession of cash, scales, or sales records.  *See State v. Hotchkiss*, 1 Wn. App.

2d 275, 280, 404 P.3d 629 (2017) ($2,150 in safe next to 8.1 grams of

methamphetamine); *State v. Lane*, 56 Wn. App. 286, 297-98, 786 P.2d 277 (1989)

(possession of drugs, $850 and a scale supported reasonable inference of sale); *State v.*

*Campos*, 100 Wn. App. 218, 224, 998 P.2d 893 (2000) (possession of one ounce of

cocaine coupled with $1,750 in cash, a cell phone, and a record of sales supported

reasonable inference of sale).

In this case, Mr. Ortiz argues that the evidence is insufficient to admit his

confessions because he provided an innocent explanation for the drugs and cash.  For

purposes of the corpus delicti rule, the evidence must not only support an inference of

intent to deliver but must also be inconsistent with a hypothesis of innocence, i.e., mere

possession.  *Brockob*, 159 Wn.2d at 329.  The question is not whether each piece of

corroborating evidence could have an innocent explanation.  Instead, we consider the

corroborating evidence together in context to determine if it is consistent with guilt or

could just as easily support a hypothesis of innocence.

The consolidated cases considered in *Brockob* provide examples of the subtleties of this rule. In the first case, the court found the evidence insufficient to admit the defendant's statements under the corpus delicti rule, where the defendant was caught stealing numerous packages of Sudafed, a known ingredient in the manufacturing of methamphetamine. While the defendant admitted he was stealing the medicine for someone else who was going to use it to make methamphetamine, there was no evidence beyond possession of the Sudafed to support the crime of manufacturing methamphetamine.

In the second case, a search of the defendant's vehicle revealed several bottles of ephedrine and loose coffee filters in different sizes in the back seat. Testimony at trial established that coffee filters are used to extract the ephedrine for manufacturing methamphetamine. *Brockob*, 159 Wn.2d at 322. Obviously, possessing coffee filters can be innocent activity. But when considered in context, having loose filters of different sizes in the back seat of a car along with bottles of ephedrine in excess of the amount that was legal to own is " 'consistent with guilt and inconsistent with a[ ] hypothesis of innocence.' " *Id*. at 329 (alteration in original) (quoting *Aten*, 130 Wn.2d at 660).

In this case, the innocent activity is possessing the controlled substances for personal use. The corroborating evidence must be consistent with an intent to distribute

11

and inconsistent with mere possession. In *Sprague*, 16 Wn. App. 2d 213, the corroborating evidence of intent to deliver included the presence of a scale and a bundle of grocery bags in the defendant's home. The circumstances surrounding the scale and grocery bags could have just as easily supported mere possession as intent to deliver. The court noted that users utilized scales, and the bags were not torn up but instead used as garbage can liners. *Id.* at 232; *see also Brockob*, 159 Wn.2d at 335 ("[I]f the independent evidence supports hypotheses of both guilt and innocence, it is insufficient to corroborate a defendant's admission of guilt.").

In *Hotchkiss*, the defendant's safe contained a large amount of methamphetamine next to $2,150 in cash. While acknowledging that the possession of methamphetamine alone was insufficient to corroborate the defendant's admissions, Division Two of this court held that the nearby cash provided the one additional factor sufficient to corroborate the defendant's admissions. *Hotchkiss*, 1 Wn. App. 2d at 285.

Mr. Ortiz challenges the sufficiency of evidence corroborating his intent to distribute the controlled substances as opposed to possessing them for personal use. Mr. Ortiz was observed hopping the fence of a house that "has been associated with drug dealing." 1 RP (June 17, 2021) at 21. He was not only in possession of controlled substances but a variety of substances in an amount more than personal use and packaged

separately. In addition, Mr. Ortiz had a wad of cash separate from his wallet totaling $275 in small denominations. *Id.* at 21. While his possession of controlled substances alone is not sufficient to show intent, and the possession of cash in isolation could just as easily be innocent conduct, when the totality of the corroborating evidence is considered in context, it supports an intent to deliver and does not support a hypothesis of innocence.

We hold that the trial court did not err in denying Mr. Ortiz's motion to suppress his statements under the corpus delicti rule.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.

13